**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

STATE OF KANSAS *et al.*,

*Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF EDUCATION *et al.*,

*Defendants*.

No. 24-4041-JWB

**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A STAY OR PRELIMINARY INJUNCTION**

During the hearing on June 20, the Court invited supplemental briefing to address how the membership of the organizational Plaintiffs should interact with any relief. While Defendants dispute that any relief is warranted, any "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see* Defs.' PI Opp'n 49, ECF No. No. 38. Here, Plaintiffs have not shown that the "extraordinary" remedy of preliminary injunctive relief would be appropriate nationwide.[1] *Clark Equip. Co. v. Harlan Corp.*, 539 F. Supp. 561, 567 (D. Kan. 1982); *see also id.* (plaintiffs must make "a clear showing of entitlement to relief"). Instead, any relief should be limited to only the extent necessary to address Plaintiffs' demonstrated harms. Such limitation would be consistent with the two courts that have issued preliminary injunctive relief addressed at the Rule, who both limited that relief to the states bringing suit. Mem. Op. & Order at 93, *Tennessee v. Cardona*, 2:24-cv-00072 (E.D. Ky. June 17, 2024), ECF No. 100; Mem. Ruling at 39-40, *Louisiana v. U.S. Dep't of Educ.*, 3:24-cv-00563 (W.D. La. June 13, 2024), ECF No. 53.

## I. Equitable Principles Require Preliminary Relief to be Limited.

As Defendants have previously explained, the APA does not provide for "vacatur" as a remedy, even at the ultimate resolution of a case. Defs.' PI Opp'n at 48-49, *cf. United States v. Texas*, 599 U.S. 670, 693-99 (2023) (Gorsuch, J., concurring in the judgment), contrary to Plaintiffs' argument. Pls.' Suppl. Br. at 1-3, ECF No. 45. But in any event, at this preliminary stage relief should be limited by traditional equitable principles, including that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the

[1] As previously discussed, Defs.' PI Opp'n 50-51, any relief granted should also be limited to the provisions of the Rule as to which the Court finds Plaintiffs have satisfied the preliminary injunction factors and—at a minimum—any injunction should not cover provisions Plaintiffs have not challenged, nor should it extend beyond the provisions (and particular applications of provisions) where Plaintiffs have shown irreparable harm. Because the Court has not asked for additional briefing on that topic, Defendants do not address it further in this brief.

plaintiffs." *Califano*, 442 U.S. at 702.

## II. Plaintiffs Have Not Demonstrated that the Organizational Plaintiffs Would Experience Harms Requiring Nationwide Relief.

Beginning with the guidepost that injunctive relief should be no more burdensome on Defendants than necessary to address Plaintiffs' injury, this analysis should focus on the specific injuries established by Plaintiffs. For the organizational Plaintiffs, it is their *members* who are allegedly harmed, Pls.' Suppl. Br. 4, mirroring the fact that an organization may assert associational standing only if, *inter alia*, "its members would otherwise have standing to sue in their own right." *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 756 (10th Cir. 2010) (citation omitted); *cf. FDA v. All. for Hippocratic Med.*, No. 23-235, 2024 WL 2964140, at *6 (U.S. June 13, 2024) ("By requiring the plaintiff to show an injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action."). In the First Amendment context, Article III standing requires that a plaintiff identify an "ongoing injury resulting from the statute's *chilling effect* on his desire to exercise his First Amendment rights." *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003) (quoting *Wilson v. Stocker*, 819 F.2d 943, 946 (10th Cir.1987)).

But the three Plaintiff-organizations have provided no evidence that any of their members faces imminent, irreparable injury due to the Rule outside the plaintiff States.

***FAU*** – Plaintiff Female Athletes United (FAU) asserts several possible injuries to its members. First, Plaintiffs allege that the Rule might make FAU members "compet[e] against males" in athletic events. Compl. ¶ 223, ECF No. 1. But because the Rule does not change the regulations addressing sex-separated athletic teams, Defs.' PI Opp'n 5-6, the Rule will not change who FAU members compete against and thus will not cause this alleged harm.

Plaintiffs also assert that FAU members will experience First Amendment harms caused

by the application of the Rule's definition of hostile environment harassment to gender identity discrimination, Compl. ¶ 224, and express concern that the Rule would prompt their schools to expose them to "biological males" in restrooms and other spaces, Compl. ¶ 222. Notably, the second concern as pled is limited to whether the Rule will "force *their* schools" to change their policies, Compl. ¶ 222 (emphasis added), thus does not rely on policies at other schools.[2] The FAU-member declarations—all from members within the Plaintiff-states—agree that the potential injuries would be redressed by relief targeted to the state of residence. *See* T.P. Decl. ¶¶ 33-34, ECF No. 25-8 ("I would not feel comfortable sharing a room with a male teammate who identifies as a girl. [] Wyoming's law makes me feel comfortable that I do not have to worry about this").

Plaintiffs submitted declarations only from FAU members in Utah and Wyoming, ECF Nos. 25-8, 25-9, and thus relief covering the Plaintiff-states would fully address the injuries to FAU members for which Plaintiffs have presented evidence. While Plaintiffs assert that FAU has members in "Arizona, Colorado, Florida, Illinois, Minnesota, North Carolina, Texas, Washington, and Wisconsin," Brown Decl. ¶ 26, ECF No. 25-5, FAU did not provide declarations from any such members, let alone evidence that any of those members share the concerns expressed by

---

[2] The Court referred at the hearing to potential injury based on athletes traveling to out-of-state events, but Plaintiffs have not pled any facts or presented any evidence indicating that they fear injury under such a theory. Furthermore, such a theory would be wholly speculative—they would require the Court to assume (i) that an unidentified person would travel to an unidentified other state; (ii) at an unknown future time; (iii) and be required to use a shared bathroom or locker room; (iv) at the same time as a person of the opposite biological sex against their wishes; (v) in a way attributable to the Rule, rather than some separate policy. Such speculative claims of future injury are insufficient to even establish standing, let alone imminent irreparable harm supporting preliminary relief. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (rejecting standing based on an attenuated chain of possibilities); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" (citation omitted)). Nor have Plaintiffs shown that any such occurrences would be traceable to the Rule or redressed by this lawsuit, given that states and schools may have their own policies regarding access to sex-separated facilities. *Cf.* 89 Fed. Reg. 33,876 (noting examples); *infra* pg. 5.

FAU's declarants or that any such concerns are non-speculative. And Plaintiffs are also upfront that not all FAU members share the concerns of FAU's declarants. *E.g.*, Compl. ¶ 224 ("*some* FAU members" want to express views about gender identity (emphasis added)), Compl. ¶ 222 ("*some* FAU members want to continue to access girls' restrooms . . . ." (emphasis added)).

***YAF*** – Plaintiff Young America's Foundation (YAF) asserts only injuries to its members based on purportedly chilled First Amendment rights based on the application of the harassment standard to gender identity discrimination. *E.g.*, Compl. ¶ 256. Plaintiffs provided declarations from YAF members in Utah, Kansas, and Wyoming specifying types of speech those members want to engage in. *Cf.* ECF Nos. 25-10, 25-11, 25-14, 25-17. Although YAF now asserts that it "has members in all fifty states," Hahn Decl. ¶ 5, ECF No. 43-7, Plaintiffs do not present evidence that members in states other than Utah, Kansas, and Wyoming share the desire of the YAF declarants to engage in particular speech that purportedly would be chilled by the Rule. Nor is there a reason to assume that all members of YAF wish to engage in similar speech or have similar concerns. Indeed, Plaintiffs' declaration submitted with their reply notes that the declarant is "familiar with" and "ha[s] spoken to" *only* the four YAF declarants. *See generally* Hahn Decl. Accordingly, relief limited to the Plaintiff-states would address the only purported injuries to YAF members for which Plaintiffs have submitted evidence.

***Moms for Liberty*** – The complaint asserts injuries to Plaintiff Moms for Liberty (MFL)'s members based on purportedly chilled First Amendment rights. *E.g.*, Compl. ¶ 227. Plaintiffs provided declarations from four members of MFL residing in Virginia, California, Pennsylvania, and New York, ECF Nos. 25-12, 25-13, 25-15, 25-16,[3] which discuss the speech the declarants

[3] It is unclear if MFL seeks to assert the rights of its members or their children, *cf.* Justice Decl. ¶ 11 (suit brought "to protect the constitutional rights of its current and future members").

and their children wish to make. Although in certain circumstances, schools have an obligation to address sex discrimination by non-students or non-employees, *see* 89 Fed. Reg. 33,685-86, Plaintiffs do not allege that the mothers plan to engage in conduct that would be subject to school's Title IX policies. Nor do they explain the current policies applicable at their children's schools or show that the Rule—as opposed to preexisting state law or governing case law—would cause a change or any purported injuries. *Cf.*, *e.g.*, Cal. Educ. Code § 234.1 (2023) (the California Department of Education should monitor local educational agencies to confirm that they adopt policies prohibiting harassment and bullying on the basis of gender identity); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 618-19 (4th Cir. 2020) (school board policy barring transgender students from using the restroom consistent with their gender identity violated Title IX), *denying reh'g en banc*, 976 F.3d 399 (4th Cir. 2020); *cert. denied*, 141 S. Ct. 2878 (2021). MFL now asserts that it has chapters "across the country," Justice Decl. ¶ 5, ECF No. 43-6, but this vague phrasing is not sufficient to meet Plaintiffs' burden to demonstrate an entitlement to nationwide relief, and Plaintiffs present no evidence that any of these unnamed members have First Amendment concerns that parallel those of the members who have provided declarations.

* * *

Ultimately, if the Court concludes relief is warranted, it should weigh the equitable relief factors and should consider, among those factors, the harm demonstrated to Plaintiffs and the harm an injunction would work against the government. These factors point against a nationwide injunction, as courts increasingly recognize in treating such "universal" injunctions with skepticism. *E.g.*, *Arizona v. Biden*, 40 F.4th 375, 395-96 (6th Cir. 2022) (Sutton, C.J., concurring).

Dated: June 24, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

*/s/ Rebecca Kopplin*
REBECCA KOPPLIN
Cal. Bar 313970
ELIZABETH TULIS
BENJAMIN TAKEMOTO
HANNAH SOLOMON-STRAUSS
PARDIS GHEIBI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: 202-514-3953
Email: Rebecca.M.Kopplin@usdoj.gov

*Counsel for Defendants*