IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STATE OF KANSAS *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION *et al.*,<br><br>    *Defendants*. | No. 24-4041-JWB |

**DEFENDANTS' MOTION FOR A PARTIAL STAY PENDING APPEAL**

Defendants respectfully request that this Court issue a partial stay pending appeal of its July 2, 2024, preliminary injunction, which enjoined Defendants from enforcing the Final Rule against the Plaintiff States, Plaintiff K.R.'s school, and the schools attended by the members (or children thereof) of the associational Plaintiffs. *See* ECF No. 53 (Prelim. Inj.); ECF No. 54 (Mem. Op.). The Court enjoined the Rule in full, even though Plaintiffs' claims focused overwhelmingly on the Rule's treatment of gender identity discrimination, and this Court held that Plaintiffs were likely to prevail in establishing that only one provision of the Rule—34 C.F.R. § 106.10—is actually unlawful. *See* Mem. Op. 40 (finding that § 106.10 "is unlawful" without "explicitly address[ing]" other provisions). And even as to that provision, no Plaintiff asserts any harm stemming from the basic prohibition on denying students educational opportunities "simply for being . . . transgender." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 651 (2020).

The Court also enjoined the Rule with respect to all members of the associational Plaintiffs. Consistent with bedrock principles of equity, the Defendants understand the Court's injunction to extend no further than to schools attended by members (or children of members) who joined the

1

organizations prior to the suit being filed or, at a minimum, prior to the Court's injunction. The associational Plaintiffs, however, are now treating the injunction as if it can extend to individuals who were not even members of their organizations when this action was filed—indeed, they are actively using the injunction to recruit new members by representing that anyone who joins automatically becomes a beneficiary of the injunction.

Defendants request that this Court stay the injunction insofar as it extends beyond the following provisions of the 2024 Rule, from which Plaintiffs' asserted harms stem: 34 C.F.R. § 106.31(a)(2), and the hostile environment harassment definition in 34 C.F.R. § 106.2 as applied to discrimination on the basis of gender identity. And in light of the associational Plaintiffs' aggressive efforts to expand their ranks, Defendants further request that this Court stay the injunction to the extent it applies to schools attended by members (or children of members) who joined the associational plaintiffs after the filing of this suit (or, at minimum, after entry of the injunction).

## LEGAL STANDARD

In determining whether to grant a stay pending appeal, a court considers (1) likelihood of success on appeal; (2) whether the applicant will suffer irreparable injury; (3) the balance of hardships to other parties interested in the proceeding; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Each of these factors weighs in favor of a partial stay pending appeal.

## ARGUMENT

**I.   Defendants Are Likely to Succeed in Establishing that the Injunction Is Overbroad.**

The injunction reaches provisions of the Rule that Plaintiffs did not challenge and that were not held unlawful by the Court, as well as provisions that did not form the basis of any alleged irreparable injury underlying Plaintiffs' request for preliminary relief. Based on well-established

remedial principles and the Rule's express severability provisions, Defendants are therefore likely to establish that the injunction is overbroad, and should be stayed to the extent it extends beyond the following provisions of the 2024 Rule: (i) 34 C.F.R. § 106.31(a)(2), and (ii) the hostile environment harassment definition in 34 C.F.R. § 106.2, as applied to discrimination on the basis of gender identity.[1]  Defendants are also likely to establish that the injunction would be overbroad to the extent it applies to members of associational Plaintiffs who were not members of the Plaintiff organizations at the time the complaint was filed or, at a minimum, the injunction issued.

### A. The Injunction Is Overbroad Because It Reaches Provisions Not Challenged by Plaintiffs or Held Unlawful by the Court.

As Plaintiffs' filings make clear, their principal claims—and the purported harms underlying those claims—are grounded in objections to the Rule's treatment of gender identity. *See* Mem. In Supp. Of Pls.' Mot for a Stay/Prelim Inj. 1 (PI Mot.), ECF No. 25 (complaining that the Rule would "institutionalize gender ideology in every aspect of K-12 education"); PI Mot. at 51 (complaining that "schools would have to reconfigure their bathrooms/locker rooms in order to follow the Final Rule").  And while Plaintiffs advanced a handful of other theories, *see, e.g.*, PI Mot. at 24-25 (contending that the Rule conflicts with 20 U.S.C. § 1688), the Court did not reach them, holding only that § 106.10 "is unlawful" while declining to "explicitly address all of the provisions in the Final Rule."  Mem. Op. 40.  The Court also suggested that "DOE's rulemaking was arbitrary and capricious," *id.*, but its arbitrary-and-capricious analysis addressed only gender identity issues.  *See* Mem. Op. 33-38.

---

[1] On appeal, Defendants will show that the entirety of the Court's injunction cannot be squared with Title IX's plain text and Supreme Court precedent.  *See* Defs.' Opp'n to Pls.' Mot. for a Stay or Prelim. Inj., ECF No. 38.  In this stay motion, Defendants seek only narrower relief, asking that this Court stay the injunction to the extent it cannot be reconciled with long-established equitable principles governing the scope of preliminary relief.

The Rule, however, promulgates many amendments to Title IX's regulations entirely unrelated to gender identity. These include, for example, provisions regarding the role of Title IX coordinators, 89 Fed. Reg. 33,474, 33,885 (Apr. 29, 2024) (to be codified at 34 C.F.R. § 106.8(a)); funding recipients' notice of nondiscrimination and record-keeping obligations, *id.* at 33,885-86 (to be codified at 34 C.F.R. § 106.8(c), (f)); access to lactation spaces, *id.* at 33,888 (to be codified at 34 C.F.R. § 106.40(b)(3)(v)); a recipient's response to sex discrimination, *id.* at 33,888-91 (to be codified at 34 C.F.R. § 106.44); and grievance procedures for claims of sex discrimination, *id.* at 33,891-95 (to be codified at 34 C.F.R. §§ 106.45, 106.46). Plaintiffs did not challenge most of these provisions in their requests for preliminary injunctive relief, nor did the Court find a single one of them unlawful. The Court's injunction was overbroad insofar as it reached these other portions of the Rule.

The Court's suggestion that § 106.10 "permeates the entire rule," such that "it is difficult to excise the remaining regulations without also eliminating those regulations that involve sex discrimination," Mem. Op. 40, cannot be squared with the actual content of these unchallenged provisions of the Rule, which have nothing to do with gender identity. Nor does anything in the Rule suggest that the Department's decision to adopt those provisions turned on its conclusions about gender identity discrimination. Quite the contrary: as the Court acknowledged, the Department crafted a "severability clause . . . in each subsection in the current regulations which provides: 'If any provision of this subpart or its application to any person, act, or practice is held invalid, the remainder of the subpart or the application of its provisions to any person, act, or practice shall not be affected thereby.'" *Id.* (quoting 34 C.F.R. §§ 106.9, 106.18, 106.48). The severability determination resolves any doubt that the Department would have adopted the Rule's provisions addressing grievance procedures, lactation accommodations, and other issues not

related to gender identity on their own. *See Am. Fuel & Petrochemical Mfrs. v. EPA*, 3 F.4th 373, 384 (D.C. Cir. 2021) (explaining that severability of regulations "depends on the issuing agency's intent," and whether the "agency would have adopted the severed portion on its own" to "operate[] independently" (citations omitted)), *cert. denied sub nom. Growth Energy v. Am. Fuel & Petrochemical Mfrs.*, 142 S. Ct. 759 (2022); *see also, e.g.*, *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 624 (2020) ("When Congress includes an express severability or nonseverability clause in the relevant statute, the judicial inquiry is straightforward. At least absent extraordinary circumstances, the Court should adhere to the text of the severability or nonseverability clause."). Insofar as the Court found only that the Court's treatment of gender identity was unlawful, it erred in enjoining anything else.

### B. Even as to Gender-Identity-Related Provisions, the Injunction Is Overbroad.

Even as to the gender identity issues upon which the Court focused, the injunction is overbroad. Most notably, the injunction is overbroad in extending to § 106.10, rather than only the definition of hostile environment harassment in § 106.2 as applied to gender identity and to § 106.31(a)(2). Title IX prohibits discrimination "on the basis of sex," 20 U.S.C. § 1681(a), and § 106.10 sets out the scope of that general prohibition, explaining that "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity," 89 Fed. Reg. at 33,886. Plaintiffs allege no harm from the Rule's recognition that prohibited discrimination includes discrimination on such bases as sexual orientation; indeed, Plaintiffs nowhere suggest that they intend to engage in discrimination against students simply for being gay. Plaintiffs thus offer no reason to enjoin this and other aspects of § 106.10.

Even as to § 106.10's inclusion of gender identity, Plaintiffs do not suggest that an injunction is necessary because they intend to treat transgender students worse for being transgender. They do not, for instance, claim that they will be irreparably harmed if they cannot bar transgender students from participating in the science fair or student government simply for being transgender, quintessential forms of sex discrimination that the Department's Title IX regulations would not expressly bar if § 106.10's definition were to be enjoined. Rather, Plaintiffs object to the Rule's provisions regarding gender identity as applied to sex-separate facilities like bathrooms and the use of pronouns when addressing transgender students. *See* PI Mot. 30-42 (constitutional claim premised on pronoun usage and related gender identity issues); PI Mot. at 51 (suggesting that "schools would have to reconfigure their bathrooms/locker rooms in order to follow the Final Rule"). But § 106.10 is not the cause of Plaintiffs' claimed harms in those respects, which flow from the provisions of § 106.31(a)(2) regarding permissible sex-separation and § 106.2's definition of hostile environment harassment.

Section 106.10, like *Bostock*, simply recognizes that discrimination on the basis of gender identity is necessarily a form of prohibited sex discrimination, without "purport[ing] to address bathrooms, locker rooms," 590 U.S. at 681, or other contexts in which different treatment or separation on the basis of sex may be permitted under Title IX. Accordingly, Plaintiffs offer no rationale that could support enjoining § 106.10, which the Department also specifically explained should operate independently if other provisions of the Rule were invalidated. *See* 89 Fed. Reg. at 33,848 (identifying § 106.10 in its severability discussion as an example of a provision "intended to operate independently" of other provisions in the Rule, and in particular noting that it is "distinct" from the Rule's definition of "sex-based harassment . . . and the prevention of participation consistent with gender identity, which are addressed in §§ 106.2 and 106.31(a)").

The injunction is also overbroad insofar as it bars all applications of § 106.2's definition of hostile environment harassment. Plaintiffs object to the application of the 2024 Rule's hostile environment harassment standard as applied to gender identity discrimination. PI Mot. at 30-42. But § 106.2's hostile environment standard applies beyond that limited context. Indeed, it protects all students from "[u]nwelcome sex-based conduct." 89 Fed. Reg. at 33,884. Plaintiffs did not identify any way in which they face irreparable harm from § 106.2's applications outside the context of discrimination on the basis of gender identity. Thus, there is no basis for enjoining those applications, which are not an asserted cause of Plaintiffs' claimed injuries.

### C. The Injunction Would Be Overbroad If It Extended to Individual Members of Associational Plaintiffs Who Joined After This Suit Was Filed.

Separately, Defendants are likely to prevail in showing the injunction is overbroad if it extends beyond schools attended by members (or children of members) who were part of the associational Plaintiffs at the time the suit was filed—or, at a minimum, at the time the Court entered the injunction. As explained, Defendants understand the injunction to be so limited. But the associational Plaintiffs are treating the injunction as if it extends to individuals who were not members at the time the complaint was filed or even at the time this Court entered the injunction. Indeed, in an apparent attempt to expand their ranks, the plaintiff Associations appear to be actively shopping the injunction to potential members ahead of the Court's deadline to file a notice identifying the schools covered by the decision. *See, e.g.*, @Moms4Liberty, X, (July 8, 2024), https://perma.cc/SMH2-RLHP (inviting anyone to "[e]xempt your child's school from the Biden Administration's radical rewrite of Title IX by becoming a member" of Moms for Liberty); @Moms4Liberty, X, (July 5, 2024), https://perma.cc/7JNE-XXLB (similar); @YAF, X, (July 4, 2024), https://perma.cc/27ZM-23S2 (inviting the public to "Exempt Your School from the Biden Administration's Radical Rewrite of Title IX By Joining YAF!"); *cf. Students for Fair Admissions,*

*Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 201 (2023) (concluding that an organization had associational standing where it had "identified members and represent[ed] them in good faith").

The Plaintiff Associations' treatment of the Court's injunction contravenes longstanding equitable principles requiring that a party has one opportunity for relief and that the effect of any judgment should be bidirectional. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 399 (2024) (Thomas, J., concurring). Plaintiffs would render the injunction a one-way ratchet, allowing individuals to join the plaintiff Associations and enjoy the benefit of the Court's ruling after already knowing how the Court would rule. Courts have long warned against the inequity of such "asymmetric" suits. *Arizona v. Biden*, 40 F.4th 375, 397 (6th Cir. 2022) (Sutton, C.J., concurring) (explaining the equitable and historical problems with "asymmetric" suits); *see also Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974) (explaining that the rule against one-way intervention under Rule 23 prevents potential parties from "await[ing] developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests"). At a minimum, then, the Court should stay the injunction to the extent it extends to individuals who were not members of the plaintiff Associations when this action was filed—or, at a minimum, who were not members when the Court ordered preliminary relief.

## II. The Balance of Harms and the Public Interest Favor a Partial Stay.

The remaining stay factors tilt decisively toward the Department. Every time the federal government "is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). The harm is particularly pronounced here because

8

the Rule effectuates Title IX's twin goals of "avoid[ing] the use of federal resources to support discriminatory practices [and] provid[ing] individual citizens effective protection against those practices." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 704 (1979). Moreover, the overbroad injunction could impair the rights of individuals with respect to the Rule's provisions that are entirely unrelated to Plaintiffs' claims by precluding the Department from taking steps to ensure that, *inter alia*, students who are new mothers have access to lactation spaces or that students are not being punished for being gay or transgender.

By contrast, Plaintiffs suffer no harm from the Department's limited request for a stay. As discussed above, Plaintiffs plainly suffer no cognizable harm from the many provisions of the Rule that they did not challenge or that the Court did not hold unlawful. As to the limited provisions Plaintiffs have challenged, the allegations of harm underpinning Plaintiffs' claims concerned only the application of two discrete provisions—34 C.F.R. § 106.31(a)(2) and the definition of hostile environment harassment within 34 C.F.R. § 106.2—governing factual contexts in which recipients may differentiate students based on sex, such as by providing sex-separated bathrooms and using sex-specific pronouns. And Plaintiffs certainly suffer no harm from this Court ensuring that the injunction's scope is properly limited to those members of plaintiff Associations who were members at the time the action was filed or, at a minimum, at the time the Court issued its injunction. Accordingly, the harms that formed the basis for the Court's issuance of preliminary relief are not implicated here, and, in any event, do not outweigh the harm to the Department from an overbroad injunction.

## CONCLUSION

The Court should stay the preliminary injunction to the extent it extends beyond the following provisions of the 2024 Rule: 34 C.F.R. § 106.31(a)(2), and the "hostile environment

9

harassment" definition in 34 C.F.R. § 106.2 as applied to gender identity discrimination. Further, Defendants request that the Court stay the injunction to the extent it applies to schools attended by members (or children of members) who joined the associational plaintiffs after the filing of this suit (or, at minimum, after entry of the injunction).

Defendants respectfully request a ruling on this motion by noon on July 16; after that point, and absent relief from this Court, Defendants anticipate seeking relief from the United States Court of Appeals for the Tenth Circuit.

Defendants conferred with counsel for Plaintiffs regarding this request. Plaintiffs oppose a stay in all respects and intend to provide a response to the Court by close of business on Friday, July 12.

Dated: July 10, 2024                                                          Respectfully submitted,

                                                                              BRIAN M. BOYNTON
                                                                              Principal Deputy Assistant Attorney General

                                                                              EMILY B. NESTLER
                                                                              Assistant Branch Director

                                                                              */s/ Rebecca Kopplin*
                                                                              REBECCA KOPPLIN
                                                                              Cal. Bar 313970
                                                                              ELIZABETH TULIS
                                                                              BENJAMIN TAKEMOTO
                                                                              HANNAH SOLOMON-STRAUSS
                                                                              PARDIS GHEIBI
                                                                              Trial Attorneys
                                                                              United States Department of Justice
                                                                              Civil Division, Federal Programs Branch
                                                                              1100 L Street NW
                                                                              Washington, DC 20005
                                                                              Phone: 202-514-3953
                                                                              Email: Rebecca.M.Kopplin@usdoj.gov

                                                                              *Counsel for Defendants*