IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STATE OF KANSAS *et al.*,

    *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF EDUCATION *et al.*,

    *Defendants*.

No. 24-4041-JWB

**DEFENDANTS' OPPOSITION TO PLAINTIFF MOMS FOR LIBERTY'S MOTION TO REVISE PRELIMINARY INJUNCTION**

Plaintiff Moms for Liberty (MFL) now requests that the Court expand its preliminary injunction to apply to all K-12 schools in any county where the child of a member of MFL resides, rather than the specific schools actually attended by such children. Pl. Moms for Liberty's Mot. Revise Stay/PI (Pl. MFL Mot.), ECF No. 62. The Court's order already addressed the harms alleged on behalf of MFL's members by applying its injunction at the school level— and MFL has made no showing that using a school-level list will lead to the identification of any specific individuals. Because the requested relief would vastly expand the scope of the injunction far beyond any reasonable fit to the harms MFL alleges, the motion should be denied.

**I.**     **Equitable Principles Require that Preliminary Injunctive Relief Apply No More Broadly Than Necessary, Yet MFL's Requested Expansion Would Unnecessarily Expand the Scope of the Injunction by Potentially a Hundredfold.**

As the Court correctly recognized in its memorandum opinion, "[t]he Supreme Court instructs that 'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Kansas v. United States Dep't of Educ.*, No. 24-4041-JWB, 2024 WL 3273285, at *19 (D. Kan. July 2, 2024) (citation omitted). In determining whether

1

to grant a preliminary injunction, or modify one, the court similarly considers the (1) likelihood of success on appeal; (2) whether the applicant will suffer irreparable injury; (3) the balance of hardships to other parties interested in the proceeding; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Defendants have a strong interest in allowing the Rule to take effect wherever it would not, in the Court's view, cause irreparable harm to the parties to this case. *E.g.*, *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (noting that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury" and "[t]here is always a public interest in prompt execution of the law, absent a showing of its unconstitutionality" (cleaned up) (citations omitted)) (Gorsuch, J., concurring).

Although Defendants seek a limited partial stay of the Court's preliminary injunction, ECF No. 59, and have appealed the Court's injunction, the Court correctly took a "circumspect" approach in declining to issue nationwide relief, instead "follow[ing] the traditional approach of limiting injunctive relief to the parties to this litigation." *Kansas v. United States Dep't of Educ.*, No. 24-4041-JWB, 2024 WL 3273285, at *19, 21. The Court concluded that the appropriate scope of relief" for MFL would be to cover "any school attended by a minor child of a member." *Id.* at *21. The Court's decision to apply relief at the school level would adequately reach any irreparable harms to MFL members while at the same time being much more tailored to the harms pled by MFL than MFL's new suggestion. And the Court was clear that "[Plaintiffs' list of schools] should not identify members of those organizations or the children of any such members." *Id.*

MFL's new proposal, on the other hand, would be vastly overbroad. If one MFL member's child attends school in a given county, that county likely contains many other schools with *no* connection to MFL members, and which have *no* relevance to any irreparable harm to any MFL

2

member. For example, the single county of Lake County, Illinois includes *46* separate public school districts, and given that many of those 46 separate school districts operate multiple schools[1] (although, as discussed below, because school district and county boundaries do not always coincide, it is possible that some of these schools may be outside of county lines), Lake County likely contains a hundred or more public schools. Similarly, Madison County, Illinois, includes 13 separate public school districts, many of which operate multiple schools.[2] Thus, granting relief at the county level instead of the school level could increase the scope of the injunction by perhaps a hundred-fold, covering what could be more than a hundred unnecessary schools for every school actually attended by the child of an MFL member.[3] Such a disproportionate expansion does not correctly balance the hardship to the parties or the public interest.

MFL's requested modification would be further overbroad in that it would presumably apply to all public schools in a county where a MFL member's minor child lives, even if the child

---

[1] Lake County includes 46 public school districts. Member Districts, Lake County Regional Office of Education, https://www.lake.k12.il.us/copy-of-atd-benefit-time-2. Many of these school districts themselves operate multiple schools. *See, e.g.*, Antioch School District 34, https://www.antioch34.com/domain/794 (select "Schools" from toolbar to view list of 5 schools); North Chicago School District 187, https://www.d187.org/ (select "Schools" from toolbar to view list of 6 schools); School Director, Waukegan Community Unit School District 60, https://www.wps60.org/cms/one.aspx?pageId=20877490 (listing 23 schools).

[2] Madison County includes 13 public school districts. *See* Madison County ROE 41, https://www.roe41.org/ (scroll down on page for list). Many of these school districts themselves operate multiple schools. *See, e.g.*, Roxana Community School District #1 https://www.roxanaschools.org/ (select "Schools" from toolbar to view list of 4 schools); Triad Community Unit #2, https://www.tcusd2.org/ (select "Schools" from toolbar to view list of 6 schools); Highland CUSD #5, https://www.highlandcusd5.org/ (select "Schools" from toolbar to view list of 6 schools).

[3] In further example, Los Angeles County, California (also included in MFL's list) includes "80 public school districts that serve 1.3 million elementary through high school students." Districts & Schools, Los Angeles County Office of Education, https://www.lacoe.edu/education/districts.

does not attend a public school in that county. For example, the child might be homeschooled,[4] might attend a public school in a different county than the county in which the child lives (perhaps to attend a specialized magnet or charter school), or might be enrolled in a private school[5] within the county. The Court's preliminary injunction already correctly avoided all of these issues by limiting relief to schools attended by children of MFL members, and that scope should remain.

## II.     MFL's Stated Reasons for Expanding the Injunction Are Not Persuasive.

None of MFL's proffered reasons justify expanding the injunction, particularly where plaintiffs bear the burden of establishing their entitlement to injunctive relief. *See Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009).

### A.     MFL's Concerns About Privacy or Harassment Are Untethered from the Court's Order Here, Which Does Not Require Identifying Any Specific MFL Members or Children and Involves Only a List of Schools.

Of course, no one should face harassment or threats. The Department takes privacy and safety concerns seriously. However, MFL has not shown how the Court's existing preliminary injunction raises any privacy or safety concerns because it has not shown how providing a list of *schools* will identify any particular student or parent. Schools are group enterprises and MFL has

---

[4] Membership applications for different county chapters of MFL can be viewed on the MFL website at https://portal.momsforliberty.org/memberships/applications/membership-application/ by selecting a specific county. The membership applications appear to vary somewhat by county. The membership application for Lake County Illinois, for example, is attached as Exhibit A. As seen on page 4/5, applicants have the option to select that their children are enrolled in private school or are homeschooled. Ex. A at 4/5.

[5] Regardless of the outcome of this litigation, private elementary and secondary schools will very rarely be subject to the Rule because Congress has not made private schools eligible for most of the Department's grant programs. *See* U.S. Dept. of Ed, Office of Non-Public Education, Frequently Asked Questions, at 2-3, 7-8 (2019), https://www2.ed.gov/about/inits/ed/non-public-education/files/onpe-faqs-aug2019.pdf. Even if a private school is a recipient of Department funds, any private school controlled by a religious organization would be exempt from any part of the Rule that would be inconsistent with the religious tenets of the organization. *E.g.*, Defs.' PI Opp. 36 n.8, ECF No. 38 (discussing Title IX's religious exemption at 20 U.S.C. § 1681(a)(3)).

not explained how providing a list of at least several hundred schools would identify any particular person, whether a MFL member or a child. MFL's motion asserts that MFL has concerns about privacy and harassment. Pl. MFL Mot. 2. But MFL *nowhere* draws a connection between providing a list of schools and in any way identifying any MFL member or child. MFL's brief and declaration are devoid of any explanation of this crucial missing link.

Nor are MFL's concerns well substantiated. By analogy, consider the threshold for sealing access to judicial records—courts starting with the Supreme Court, through the Tenth Circuit, and including district courts in this circuit have repeatedly emphasized that motions to seal or for protective orders require "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (addressing the "good cause" for a protective order under Fed. R. Civ. P. 26(c)); *see also, e.g.*, *United States v. Grigsby*, 784 F. App'x 592, 595 (10th Cir. 2019) (district court did not abuse discretion in denying motion to seal where court was "without evidence" to support requester's "expressed concern about his safety"); *H.S. by Guinan v. FedEx Ground Package Sys., Inc.*, No. CV 22-2175-KHV, 2023 WL 3948528, at *1 (D. Kan. June 12, 2023) (rejecting request to seal based in part on "speculat[ion] that public disclosure of the settlement amount could bring unnecessary harassment to the minor"); *Azzun v. Kansas Dep't of Health & Env't*, No. CV 10-2009-KHV, 2020 WL 1492697, at *1 (D. Kan. Mar. 27, 2020) (rejecting motion for reconsideration of denial of request to seal where "plaintiff does not explain any basis for his fear or why any alleged threats are credible based on the nature of this case"); *Goico v. Kansas*, No. 19-01055-JTM-GEB, 2019 WL 10984408, at *2 (D. Kan. Mar. 26, 2019) (holding that "[s]peculative, vague, impersonal, and generalized examples of threats of violence and retaliation are insufficient to demonstrate an 'exceptional circumstance' exists to shield Plaintiff's identity

from the public" in request for pseudonymity), *objections overruled*, No. 19-1055-JTM, 2019 WL 8301689 (D. Kan. Apr. 12, 2019).

MFL's speculative and generalized concerns here do not meet even this standard for sealing or pseudonymity, let alone offer support for the vast expansion of the equitable relief they now seek—even assuming that the information here somehow qualified for sealing, given that the Court's preliminary injunction does not require MFL to provide any names. Because MFL could not even meet the applicable standard for sealing or pseudonymity, its alleged interests also do not outweigh the government's interest in enforcing its laws. Indeed, the Supreme Court recently stayed as overbroad a district court injunction that had universally enjoined a state law, instead of enjoining it only as to the specific plaintiffs. *Labrador v. Poe*, 144 S. Ct. 921, 921 (2024). The dissenting opinion explained that a part of the district court's reasoning was "because it found that [a universal injunction] was necessary" to protect the plaintiffs, who were proceeding pseudonymously, *Labrador v. Poe*, 144 S. Ct. 921, 936 (2024) (Jackson, J., dissenting), but the majority of the justices disagreed with that necessity. Here, of course, MFL falls short of even the standard met by the *Labrador* plaintiffs because MFL has not attempted to meet or met the standard to proceed pseudonymously.

MFL's conduct throughout this litigation also is in tension with their assertion now that they oppose "[e]xposing the Members of [MFL] in any way." Justice Decl. ¶ 16, ECF No. 62-1. For example, five different members of MFL submitted declarations in this case without seeking leave to proceed pseudonymously or any other form of anonymization. *See* ECF Nos. 25-12, 25-13, 25-15, 25-16, 43-6. The MFL website also provides contact information for the individual leaders of many chapters, including photographs, full names, phone numbers, and email addresses. *See* Find a Chapter Near You, https://www.momsforliberty.org/chapters/ (select a specific chapter

to see information about chapter leaders) (last viewed July 12, 2024). All of this information, which is voluntarily publicized by MFL, is much more identifying than the list of schools required by the Court's order. Nor have co-plaintiffs YAF or FAU expressed any similar concerns or sought any similar relief.

  B. <u>MFL Fails to Explain Why It Cannot Collect the Relevant Information from Its Members, and Its Vaguely Described Administrative Convenience Does Not Outweigh the Government's Interest in Enforcing the Law.</u>

MFL's second objection is that MFL has not historically maintained a list of schools attended by children of MFL members. Pl. MFL Mot. 2. Indeed, MFL seems to request a county-level approach (rather than, for example, an approach at the level of city or school district) simply because that is the format in which it has historically collected information. But MFL offers no case supporting the proposition that the equitable principles requiring a reasonable fit between an injunction and an asserted injury should be subordinated to a plaintiff's preferred record-keeping practices, nor do they justify their suggestion that a plaintiff's administrative convenience is sufficient to outweigh the government's interest in enforcing its laws. There is also no principled limit on MFL's argument—an organization that maintained membership information only at the state or regional level would not be entitled to a state- or region-wide injunction based on the happenstance of its own recordkeeping practice. Indeed, the contrary conclusion would incentivize membership organizations to maintain only scant or highly-generalized information.

Furthermore, MFL offers no explanation as to *why* it would be burdensome for the organization to collect the information required by the Court's order, even if collecting it has not been the group's historical practice.[6] If MFL "has identified members and represents them in good

---

[6] Although MFL's declarant states that "When a parent joins Moms for Liberty, the parent is not asked to identify the school district, no less the school, at which his or her child is in attendance," Justice Decl. ¶ 6, at least some of the county chapter membership applications

7

faith" for purposes of establishing organizational standing, *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 201 (2023), it is unclear why it cannot provide the Court with member-related information that would enable the Court to craft appropriately tailored injunctive relief. *Cf. id.* (noting that members in that case "receive[d] updates about the status of the case from [the organization's] President; and [members] have had the opportunity to have input and direction on [the organization's] case"). MFL presumably has contact information for its members, and presumably also periodically sends emails to its membership list. MFL could simply email its members asking them to reply with applicable schools attended by their children. MFL summarily argues, based on only an equally conclusory statement in their attached declaration, that identifying schools would be difficult, Pl. MFL Mot. 2 (citing Justice Decl. ¶ 8), but MFL offers no explanation as to why this would be the case. Indeed, YAF and FAU have presumably had to similarly collect or check information on the schools attended by their members, but had no objection to doing so.

In balancing the equities and considering the public interest, the Court should not expand the scope of the injunction—potentially by a factor of a hundred—to serve MFL's convenience, particularly given that MFL offers no explanation of why it would be burdensome for them to collect the information required by the Court's order.

C.  MFL's Speculative Reference to School Convenience Oversimplifies.

MFL also suggests, in just a few sentences, that a county-based approach would somehow be easier for schools. As an initial matter, no evidence from schools concerning their convenience is before the Court. Furthermore, public school districts and counties are not mutually co-

---

currently viewable on the Moms for Liberty website ask applicants to identify specific schools and school districts. For example, the Lake, IL application asks for "District" and "School Name" on page 3/5, which further demonstrates that MFL's concerns regarding feasibility of collecting such information is overstated. Ex. A at 3/5.

extensive. Districts often span multiple counties, and counties often include multiple districts. Accordingly, it is irrelevant if "[s]chool districts, rather than individual schools, typically have the authority to adopt such policies," Pl. MFL Mot. 4, because MFL's county-based approach would also split school districts and likely include school districts in which no child of an MFL member resides. *See* School District Geographic Relationship Files, National Center for Education Statistics, https://nces.ed.gov/programs/edge/Geographic/RelationshipFiles (explaining that school district boundaries "may or may not be consistent with boundaries for other types of legal and statistical areas like counties, Congressional Districts, or census tracts. . . . for example, a school district boundary may include territory in two different counties or intersect three different Congressional Districts").

## CONCLUSION

For the previously stated reasons, MFL's motion should be denied.

Dated: July 14, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

*/s/ Rebecca Kopplin*
REBECCA KOPPLIN
Cal. Bar 313970
ELIZABETH TULIS
BENJAMIN TAKEMOTO
HANNAH SOLOMON-STRAUSS
PARDIS GHEIBI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005

Phone: 202-514-3953
Email: Rebecca.M.Kopplin@usdoj.gov

*Counsel for Defendants*