**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| STATE OF KANSAS *et al.*, <br><br> *Plaintiffs*, <br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION *et al.*, <br><br> *Defendants*. | No. 24-4041-JWB |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A PARTIAL STAY**

Defendants' motion for a partial stay pending appeal explained that this Court's injunction was impermissibly overbroad in several respects. ECF No. 59 (Defs.' Mot.). The Court enjoined numerous provisions of the Final Rule that Plaintiffs did not challenge and that the Court did not find unlawful. Even as to the challenged provisions, the injunction wrongfully enjoins (1) 34 C.F.R. § 106.10, which does not cause Plaintiffs any injury, and (2) 34 C.F.R § 106.2's hostile environment harassment definition as applied to contexts other than gender identity discrimination. Finally, the injunction is overbroad if it extends beyond schools attended by members (or children of members) who were part of the associational Plaintiffs at the time the suit was filed—or, at a minimum, at the time the Court entered the injunction. Nothing in Plaintiffs' opposition undermines that analysis. *See* ECF No. 63 (Pls.' Opp'n).

## ARGUMENT

**I.     Defendants Are Likely to Show That the Injunction Is Unlawfully Overbroad.**

**A.     The Court Enjoined Severable Provisions That Plaintiffs Do Not Challenge.**

As Plaintiffs recognize, Pls.' Opp'n 2, the Rule effects many changes to Title IX's regulations beyond those that Plaintiffs challenged. Plaintiffs identified no harm that they are suffering due to the unchallenged portions of the Rule, and the Court found none of those provisions unlawful. As the Court acknowledged, moreover, each subsection in which the challenged provisions appear contains a severability clause. ECF No. 53, at 40 (Op.). It is black-letter law that where a provision of a rule is held invalid, the remaining provisions may go into effect "unless there is 'substantial doubt' that the agency would have left the balance of the rule intact." *Finnbin, LLC v. CPSC*, 45 F.4th 127, 136 (D.C. Cir. 2022); *see also Ariz. Pub. Serv. Co. v. EPA*, 562 F.3d 1116, 1122 (10th Cir. 2009). Applying this rule is not "outside of the proper judicial role," Pls.' Opp'n 7; rather, it reflects respect for the clear intentions of federal agencies.

1

Plaintiffs erroneously suggest that "severability is not required at the preliminary injunction stage." Pls.' Opp'n 4. A court has discretion in crafting preliminary relief, but it abuses that discretion where, as here, it enters an injunction so "broad [that] there is a risk that it restrains legal conduct." *Union Home Mortgage Corp. v. Cromer*, 31 F.4th 356, 364 (6th Cir. 2022); *see, e.g.*, *EagleMed LLC v. Cox*, 868 F.3d 893, 905 (10th Cir. 2017). No authority supports the suggestion that a court may ignore an agency's express severability determination when crafting a preliminary injunction.

Plaintiffs are also wrong that the Department would not have promulgated the Rule "absent the challenged portions." Pls.' Opp'n 6. The Department made clear that "[i]f any provision of this subpart or its application to any person, act, or practice is held invalid, the remainder of the subpart or the application of its provisions to any person, act, or practice shall not be affected thereby." 34 C.F.R. § 106.9. The severability provision resolves any doubt that the Department would have adopted the Rule's unchallenged provisions addressing grievance procedures, lactation accommodations, and other issues not related to gender identity on their own.

Equally unavailing is Plaintiffs' claim that the challenged provisions cannot be severed because § 106.10's description of the scope of prohibited sex discrimination "permeates" the Rule. Pls.' Opp'n 4 (quoting Op. 40). As the Defendants explained, Defs.' Mot. 4-5, that contention cannot be squared with the operation of the unchallenged provisions or the Department's express severability determination, which clearly explains that different aspects of the Rule—including § 106.10—could operate independently. *See* 89 Fed. Reg. 33,474, 33,848 (Apr. 29, 2024).

Plaintiffs also suggest that the scope of relief is proper because the Court "stay[ed]" the Rule's rollout under 5 U.S.C. § 705. Pls.' Opp'n 4. But the Court did not enter relief under § 705; its order is styled as a "preliminary injunction." ECF No. 54; *see also* Pls.' Opp'n 1

2

(acknowledging as much). In any event, a § 705 stay operates in the same manner as a preliminary injunction subject to the traditional equitable principles under which relief granted should correlate to injury found. *See Sampson v. Murray*, 415 U.S. 61, 68 n.15 (1974).

Finally, the Defendants' severability arguments were not forfeited. *Contra* Pls. Opp. 6. Defendants' opposition to the request for preliminary relief included an express discussion of severability, *see* ECF No. 38, at 50, which the Court addressed, Op. 40. An argument pressed and passed upon plainly has not been forfeited.

**B.     This Court Erred in Enjoining Provisions That Cause Plaintiffs No Harm.**

Even as to the challenged provisions, the injunction is overbroad insofar as it enjoins provisions of the Rule—and potential applications thereof—that cause Plaintiffs no harm.

***34 C.F.R. § 106.10.*** Section 106.10 straightforwardly applies the reasoning of *Bostock v. Clayton County*, 590 U.S. 644 (2020). But even apart from Defendants' likelihood of success on that issue, the Court should grant the partial stay because § 106.10—which makes clear that Title IX's regulations bar acts of sex discrimination against individuals simply for being transgender—causes Plaintiffs no harm. Indeed, Plaintiffs readily agree that there are "many areas—like science fairs and student government—where" they "don't intend to discriminate against transgender students." Pls.' Opp'n 3. Because Plaintiffs have not shown that as a result of § 106.10 they will suffer irreparable harm, *i.e.*, a "prerequisite for the issuance of a preliminary injunction," *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (quotation marks omitted), this Court cannot enjoin that provision, even if it agrees with Plaintiffs' argument regarding *Bostock*.

Plaintiffs' suggestion that § 106.10 causes them harm by "vitiat[ing] sex-designations in situations . . . like showers and locker rooms" only underscores their misapprehension of how the Rule operates. Pls.' Opp'n 3. As Defendants explained, Defs.' Mot. 5, § 106.31(a)(2)—not

3

§ 106.10—is the provision of the Rule governing how Title IX's prohibition on sex discrimination limits otherwise permissible sex separation with respect to "intimate spaces." Pls. Opp. 4. Because only § 106.31(a)(2) addresses this issue, any relief with respect to Plaintiffs' concerns regarding sex-separate "intimate spaces" would run at most against § 106.31(a)(2).

*34 C.F.R. § 106.2.* The injunction is also overbroad with respect to 34 C.F.R. § 106.2. That provision defines many terms, but Plaintiffs challenge only its definition of hostile environment harassment. While Plaintiffs suggest that the Court found the provision vague as a general matter, *see* Pls. Opp. 5, the Court's analysis focused on the application of § 106.2's definition of hostile environment harassment to speech regarding gender identity. *See* Op. 30. And even if the Court's concerns extended to other applications, that would at most warrant leaving the injunction in place as to the definition of hostile environment harassment, and not as to § 106.2's many other definitions, including its definition of other, unchallenged forms of sex-based harassment. It thus was error for this Court to enjoin § 106.2 as to all of its definitions and all of its applications.

### C. The Injunction Would Be Overbroad If It Applied to Newly Recruited Members of Plaintiff Associations.

As the Defendants explained, Defs.' Mot. 7-8, Plaintiffs' treatment of the Court's injunction contravenes bedrock principles of equity. Plaintiffs do not dispute that they are actively shopping the Court's injunction via social media, offering to "[e]xempt" individuals from the Rule's coverage "by becoming a member." *See* @Moms4Liberty, X, (July 8, 2024), https://perma.cc/SMH2-RLHP. That is not the happenstance of "fluid" membership, Pls.' Opp'n 9, but rather an apparent effort by the plaintiff Associations to leverage this Court's injunction to expand their ranks. Plaintiffs cite no authority countenancing such conduct. Indeed, equity has long limited mechanisms whereby potentially affected individuals may "await developments in the trial or even final judgment on the merits in order to determine whether participation would be

4

favorable to their interests," *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974), which is precisely what Plaintiffs ask the Court to endorse here.

## II.     The Balance of Harms and the Public Interest Favor a Partial Stay.

Finally, the equities tilt decisively in favor of the limited stay requested here. That stay would restore provisions that Plaintiffs have not challenged or that prohibit conduct in which Plaintiffs do not intend to engage—including prohibitions on things like excluding a student from the lunchroom because he is transgender or requiring a breastfeeding student to express breastmilk in a bathroom stall. While Plaintiffs claim that they will incur costs to come into compliance with the Rule, those alleged costs flow from provisions and applications of the Rule that either have not been challenged or that would remain enjoined under the requested stay. *See, e.g.*, *Haaland v. Brackeen*, 599 U.S 255, 296 (2023) (rejecting standing claim premised on costs of record keeping and notice requirements where "Texas would continue to incur the complained-of costs even if it were relieved of the duty" to comply with the challenged provisions). And even if those costs were legally relevant, they would pale in comparison to the federal government's interest in stamping out sex discrimination. *Cf. Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008) (showing of irreparable injury "outweighed by the public interest").

## CONCLUSION

For the foregoing reasons, the Court should stay the preliminary injunction to the extent it extends beyond the following provisions of the 2024 Rule: 34 C.F.R. § 106.31(a)(2), and the "hostile environment harassment" definition in 34 C.F.R. § 106.2 as applied to gender identity discrimination. The Court should further stay the injunction to the extent it applies to schools attended by members (or children of members) who joined the associational plaintiffs after the filing of this suit (or, at minimum, after entry of the injunction).

| | |
|---|---|
| Dated: July 15, 2024 | Respectfully submitted,<br><br>BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General<br><br>EMILY B. NESTLER<br>Assistant Branch Director<br><br>/s/ *Rebecca Kopplin*<br>REBECCA KOPPLIN<br>Cal. Bar 313970<br>ELIZABETH TULIS<br>BENJAMIN TAKEMOTO<br>HANNAH SOLOMON-STRAUSS<br>PARDIS GHEIBI<br>Trial Attorneys<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street NW<br>Washington, DC 20005<br>Phone: 202-514-3953<br>Email: Rebecca.M.Kopplin@usdoj.gov<br><br>*Counsel for Defendants* |