**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

STATE OF KANSAS *et al.*,

      *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF
EDUCATION *et al.*,

      *Defendants*.

No. 24-4041-JWB

**DEFENDANTS' REPLY SUPPORTING THEIR**
**CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

# TABLE OF CONTENTS

Introduction ........................................................................................................................ 1

Argument .......................................................................................................................... 1

I.    The Court Should Grant Judgment on the Administrative Record for Defendants ................ 1

    A.    Section 106.10 Correctly Sets Forth the Scope of Title IX's Prohibition on Sex Discrimination .......................................................................................................... 1

    B.    Section 106.31(a)(2) Is Consistent with the Text and Structure of Title IX. ................. 4

    C.    Section 106.2's Definition of Hostile Environment Harassment Is Lawful ................ 6

    D.    The Challenged Reasonable Modification and Leave Provisions Do Not Violate 20 U.S.C. § 1688 ....................................................................................................... 12

    E.    No Provision of the Rule Violates the Spending Clause. ...................................... 12

    F.    The Rule Does Not Violate the Major Questions Doctrine ................................... 13

II.    The Individual and Organizational Plaintiffs Have Failed To Demonstrate Standing With Respect to Most of the Challenged Provisions .......................................................... 14

III.    Any Relief Awarded in this Case Should Comport with Equitable Principles. ...................... 17

    A.    Any Relief Should Be Limited to Portions of the Rule Held To Be Unlawful. .......... 17

    B.    Any Relief Should Be Limited to the Parties. ..................................................... 21

    C.    Plaintiffs Have Not Demonstrated Irreparable Harm Justifying Injunctive Relief that Reaches Outside the Plaintiff-States. .......................................................... 21

Conclusion ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Bostock v. Clayton County,*
  590 U.S. 644 (2020) .................................................................................................*passim*

*Bowman v. Merrimac R.E. Hlds., LLC,*
  No. CIV-19-0675-F, 2019 WL 6341647 (W.D. Okla. Nov. 27, 2019) ................................23

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ......................................................................................... 22, 23

*Chester v. Laroe Ests., Inc.,*
  581 U.S. 433 (2017) ......................................................................................................14

*D.L.S. v. Utah,*
  374 F.3d 971 (10th Cir. 2004) ......................................................................................15

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) ......................................................................................................14

*Dambrot v. Cent. Mich. Univ.,*
  55 F.3d 1177 (6th Cir. 1995) ........................................................................................11

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.,*
  526 U.S. 629 (1999) ..........................................................................................7, 10, 11

*Day v. Bond,*
  500 F.3d 1127 (10th Cir. 2007) ....................................................................................14

*DeAngelis v. El Paso Mun. Police Officers Ass'n,*
  51 F.3d 591 (5th Cir. 1995) ..........................................................................................10

*Dep't of Educ. v. Louisiana,*
  144 S. Ct. 2507 (2024) ..................................................................................................18

*Dine Citizens Against Ruining Our Env't v. Haaland,*
  59 F.4th 1016 (10th Cir. 2023) .....................................................................................21

*Faustin v. Denver,*
  268 F.3d 942 (10th Cir.2001) ........................................................................................17

*FDA v. All. for Hippocratic Med.,*
  602 U.S. 367 (2024) ......................................................................................................23

*Fowler v. Stitt,*
  104 F.4th 770 (10th Cir. 2024) .......................................................................................2

*Franciscan All., Inc. v. Azar,*
  414 F. Supp. 3d 928 (N.D. Tex. 2019) .................................................................11

*Franklin v. Martinez,*
  No. 22-2137, 2023 WL 4995037 (10th Cir. Aug. 3, 2023) ....................................20

*Gebser v. Lago Vista ISD,*
  524 U.S. 274 (1998) .................................................................................................2

*Goico v. Kansas,*
  773 F. App'x 1038 (10th Cir. 2019) .....................................................................20

*Green v. Branson,*
  108 F.3d 1296 (10th Cir. 1997) ............................................................................20

*Harmon v. City of Norman,*
  61 F.4th 779 (10th Cir. 2023) .................................................................................9

*Harris v. Forklift Sys., Inc.,*
  510 U.S. 17 (1993) ...................................................................................................7

*Heideman v. S. Salt Lake City,*
  348 F.3d 1182 (2003) ............................................................................................23

*Hunt v. Washington State Apple Advert. Comm'n,*
  432 U.S. 333 (1977) ...............................................................................................23

*Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.,*
  958 F.2d 1018 (10th Cir. 1992) .......................................................................23, 24

*Initiative & Referendum Inst. v. Walker,*
  450 F.3d 1082 (10th Cir. 2006) ........................................................................15, 17

*Jackson v. Birm. Bd. of Educ.,*
  544 U.S. 167 (2005) ...............................................................................................13

*L.M. v. Town of Middleborough,*
  No. 23-cv-11111, 2023 WL 4053023 (D. Mass. June 26, 2023) .............................8

*Labrador v. Poe,*
  144 S. Ct. 921 (2024) ............................................................................................21

*Laird v. Tatum,*
  408 U.S. 1 (1972) ...................................................................................................15

*Muldrow v. St. Louis,*
  601 U.S. 346 (2024) .................................................................................................4

*N.M. Health Conns. v. HHS,*
   340 F. Supp. 3d 1112 (D.N.M. 2018) ................................................21

*New Mexicans for Bill Richardson v. Gonzales,*
   64 F.3d 1495 (10th Cir. 1995)................................................20

*Olenhouse v. Commodity Credit Corp.,*
   42 F.3d 1560 (10th Cir. 1994)................................................6

*Parents Defending Educ. v. Olentangy Loc. Sch. Dist.,*
   109 F.4th 453 (6th Cir. 2024)................................................8

*Prairie Band Potawatomi Nation v. Wagnon,*
   476 F.3d 818 (10th Cir. 2007)................................................21

*Renne v. Geary,*
   501 U.S. 312 (1991)................................................20

*Rio Grande Found. v. Oliver,*
   57 F.4th 1147 (10th Cir. 2023)................................................15

*Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.,*
   511 F.3d 1114 (10th Cir. 2008)................................................10

*Rowles v. Curators,*
   983 F.3d 345 (2020)................................................9

*Rumsfeld v. FAIR, Inc.,*
   547 U.S. 47 (2006)................................................7

*Speech First, Inc. v. Fenves,*
   979 F.3d 319 (5th Cir. 2020)................................................11

*Texas v. United States,*
   523 U.S. 296 (1998)................................................20

*Texas v. United States,*
   No. 2:24-cv-86-Z, 2024 WL 3405342 (N.D. Tex. July 11, 2024)................................................12

*United States v. Texas,*
   599 U.S. 670 (2023)................................................21

*Ziggy1 Corp. v. Lynch,*
   No. CIV-15-0715-HE, 2016 WL 4083656 (W.D. Okla. Mar. 23, 2016)................................................22

**Statutes**

5 U.S.C. § 704 ................................................20

20 U.S.C. § 1681 ...........................................................................................................................9

20 U.S.C. § 1681(a) .................................................................................................................*passim*

20 U.S.C. § 1682 .........................................................................................................................13

20 U.S.C. § 1686 ...........................................................................................................................3

20 U.S.C. § 1688 ......................................................................................................................1, 12

42 U.S.C. § 2000bb–1(a) ...........................................................................................................11

42 U.S.C. § 2000e-2(a)(1) ...........................................................................................................3

42 U.S.C. § 2000e-2(e) .................................................................................................................3

**Regulations**

34 C.F.R. § 106.11 ....................................................................................................................9, 10

34 C.F.R. § 106.2 .....................................................................................................................*passim*

34 C.F.R. § 106.31(a)(2) ..........................................................................................................*passim*

34 C.F.R. § 106.6(d) ......................................................................................................................7

45 C.F.R. § 86.21(c)(2) ...............................................................................................................12

45 C.F.R. § 86.40(b)(1) ...............................................................................................................12

45 C.F.R. § 86.40(b)(4) ...............................................................................................................12

45 C.F.R. § 86.40(b)(5) ...............................................................................................................12

45 C.F.R. § 86.57(b) ....................................................................................................................12

45 C.F.R. § 86.57(c) ....................................................................................................................12

45 C.F.R. § 86.57(d) ....................................................................................................................12

*Department of Health, Education, & Welfare, General Administration,*
    40 Fed. Reg. 24,128 (1975) ...................................................................................................12

*Nondiscriminationon the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance,*
    85 Fed. Reg. 30,026 (May 19, 2020) ........................................................................................7

*Nondiscriminationon the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance,*
    89 Fed. Reg. 33,474 (Apr. 29, 2024) ................................................................................*passim*

# INTRODUCTION

This case is about just a handful of provisions of an omnibus rule issued by the Department of Education pursuant to its authority to effectuate Title IX's broad prohibition on sex discrimination. As Defendants have now had the opportunity to explain based on the extensive administrative record, those provisions—which have separate functions and independent justifications—are lawful. *See* Defs.' Mem. Supp. Cross-Mot & Opp'n (Defs.' Mot.), ECF No. 90. Section 106.10 applies the reasoning of *Bostock v. Clayton County*, 590 U.S. 644 (2020), which addressed Title VII, to Title IX's materially indistinguishable text. Plaintiffs struggle and fail to distinguish *Bostock*. Pls.' Opp'n & Reply (Pls.' Opp'n), ECF No. 94. Section 106.31(a)(2) reflects Title IX's text and structure by proscribing sex-based separation or differentiation that causes harm, unless Congress has permitted it. Section 106.2 includes a definition of "hostile environment harassment" designed to effectuate Title IX's broad reach, which Plaintiffs do not dispute is consistent with the standards applied under other civil-rights statutes. And the provisions that address termination of pregnancy do not violate 20 U.S.C. § 1688. Furthermore, the individual and organizational Plaintiffs lack standing to challenge at least four of the five provisions at issue.

But even if the Court were to disagree, relief should be limited in accordance with equitable principles. Plaintiffs fail to demonstrate any basis to enjoin the Rule in its entirety—the vast majority of which they have not challenged. Plaintiffs also fail to establish that relief should extend beyond the parties or to show that any injunctive relief should extend outside the Plaintiff States. Defendants' motion for judgment on the administrative record should be granted.

# ARGUMENT

## I.   The Court Should Grant Judgment on the Administrative Record for Defendants.

### A.   Section 106.10 Correctly Sets Forth the Scope of Title IX's Prohibition on Sex Discrimination.

The only question as to § 106.10 is whether that provision accurately sets forth the scope of

Title IX's prohibition against discrimination "on the basis of sex." Plaintiffs de-prioritize that question, Pls.' Opp'n 12-15, largely reiterating their prior arguments and arguing that § 106.10 "cannot" coexist with an interpretation of Title IX that refers to "biological sex," Pls.' Opp'n 13.

But the Department has repeatedly explained that, as in *Bostock*, sex discrimination encompasses gender-identity discrimination "even if [sex] is understood to mean only physiological or 'biological distinctions between male and female.'" *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474, 33,802 (Apr. 29, 2024). If a school punishes a transgender girl for being transgender, it has engaged in discrimination "on the basis of sex," 20 U.S.C. § 1681(a), because it has penalized her for traits it would have tolerated in a student identified as female at birth. Indeed, the Tenth Circuit has recognized that *Bostock*'s insight regarding the fundamentally "intertwined nature of transgender status and sex" is not limited to Title VII. *Fowler v. Stitt*, 104 F.4th 770, 790 (10th Cir. 2024). In their reply, Plaintiffs do not contend with *Fowler*, nor distinguish its understanding of *Bostock*. Because § 106.10 does no more than apply *Bostock*'s insight to Title IX's materially indistinguishable prohibition on sex discrimination, and does not "create new protected classes," Plaintiffs' suggestion that § 106.10 expands the scope of Title IX's protections is incorrect. Pls.' Opp. 15.[1]

Plaintiffs argue for a "group-based understanding" of Title IX, Pls.' Opp'n 13, but fail to explain what relevance that would have to the scope of sex discrimination. In any event, Title IX and VII both prohibit discrimination against *individuals* based on sex, rather than simply mandating that comparable conditions be achieved at the group level. *See Gebser v. Lago Vista ISD*, 524 U.S. 274, 287

---

[1] Plaintiffs mischaracterize the Supreme Court's decision regarding applications to partially stay preliminary injunctions of the Rule in related cases, which they contend addressed the merits of *Bostock*'s application to Title IX. Pls.' Opp'n 3. Not so. That decision addressed only stay-stage arguments regarding relief granted to plaintiffs during the pendency of the government's appeals of preliminary injunctions. Defs.' Mot. 14 n.2.

(1998) ("Title IX focuses . . . on 'protecting' individuals from discriminatory practices."); *compare* 20 U.S.C. § 1681(a) (prohibiting discrimination against any "person"), *with* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination against "any individual").

Plaintiffs further contend that the Department's interpretation "cannot account" for "long-accepted" exceptions under Title IX, such as those for "dormitories and showers to sports and P.E. classes." Pls.' Opp'n 13. Plaintiffs' simplistic view appears to be that the existence of any exceptions "forecloses applying *Bostock*'s any-consideration-of-sex formula."[2] Pls.' Opp'n 13. But the fact that Title IX makes allowance for sex differentiation in specific contexts does not undermine the core insight that discrimination for being transgender is discrimination on the basis of sex. That 20 U.S.C. § 1686 phrases its carveout as an "interpretation" is of no moment—the upshot is that Title IX does not prohibit "separate living facilities for the different sexes," and a reading—like Plaintiffs'—that would allow harmful differentiation or separation outside the living-facilities context, would cause the exception to swallow the rule. Moreover, the existence of a statutory exception cannot "foreclose" *Bostock*'s reasoning as Plaintiff suggests, Pls.' Opp'n 13, because Title VII likewise contains statutory exceptions. *See* 42 U.S.C. § 2000e-2(e) (bona fide qualifications). Nor does § 106.10 "assum[e that] any distinction that notices sex is consequently sex-based discrimination," Pls.' Opp'n 13—§ 106.10 addresses the scope of discrimination based on sex, and does not define what constitutes "discrimination." *Cf.* § 106.31(a)(2) (addressing de minimis harm).

---

[2] As part of this argument about the contexts in which § 106.10 is applied, Plaintiffs object to § 106.31(a)(2)'s application of Title IX's nondiscrimination standard to "toilet, locker room, and shower facilities," Pls.' Opp'n 14, which, as Defendants make clear, are not living facilities under 20 U.S.C. § 1686. But § 106.31(a)(2) represents a straightforward application of the de minimis harm standard to "contexts for which there is no statutory exception, such as sex-separate restrooms," and is faithful to both the statute's broad nondiscrimination mandate and the limited contexts where Congress implemented a different rule. 89 Fed. Reg. at 33,819. (As the Department recognized, when cisgender students are denied access to sex-separate restrooms inconsistent with their sex assigned at birth, they suffer no cognizable sex-based harm.)

Finally, § 106.10 is not arbitrary or capricious. Plaintiffs present their arbitrary and capricious arguments without explaining to which provisions of the Rule they apply, Pls.' Opp'n 26-28, but Defendants address them by provision. As to § 106.10, the Rule properly acknowledged that it reflected a change in interpretation and provided a reasoned basis for doing so. Defs.' Mot. 15-16.

### B.   Section 106.31(a)(2) Is Consistent with the Text and Structure of Title IX.

Plaintiffs' misapprehension of § 106.10 notwithstanding, it is § 106.31(a)(2) that addresses how Title IX's prohibition on sex discrimination applies to sex separation or differentiation, including in the contexts like restrooms and locker rooms upon which Plaintiffs focus. And none of Plaintiffs' arguments establishes that § 106.31(a)(2) is inconsistent with Title IX's text and structure.

Plaintiffs once again do not dispute the ample case law, research, comments, and evidence from schools' many years of experience that led the Department to conclude in § 106.31(a)(2) that preventing a person from participating in a program or accessing a sex-separate facility consistent with their gender identity subjects them to harm. Defs.' Mot. 17-18 & n.4.

Contrary to Plaintiffs' argument, Pls.' Opp'n 15, § 106.31(a)(2) does not treat Title IX as a disparate-impact statute. Section 106.31(a)(2) reflects that Title IX prohibits different treatment or separation on the basis of sex that causes more than de minimis harm and has not been carved out by Congress; § 106.31(a)(2) does not prohibit acts that merely have a disparate impact. No one disputes that the term "discriminate against" refers to "differences in treatment that injure" individuals. *Muldrow v. St. Louis*, 601 U.S. 346, 354 (2024). Plaintiffs thus misunderstand the Rule when they imply it contains a "theory that any sex distinction causes harm." Pls.' Opp'n 17.

Nor does § 106.31(a)(2) give "preferential treatment to transgender students." Pls.' Opp'n 16. On its face, § 106.31(a)(2) applies "with equal force to all students," 89 Fed. Reg. at 33,818, and thereby "protects all students from harm," *id.* at 33,820. Where the Rule addresses the specific example of transgender students, that is because of the Department's findings regarding the wide variety of

4

serious, concrete harms that transgender students face from being treated inconsistent with their gender identity, *see id.* at 33,818-19.[3]

Plaintiffs try to read away the plentiful record evidence that led the Department to identify harm to transgender students from being excluded from participation consistent with their gender identity. They suggest that the views of "medical advocacy organizations in 2024" cannot have any bearing on the meaning of Title IX. Pls.' Opp'n 17. But "discrimination" has always meant differentiation or separation that causes harm; the evidence simply demonstrates that, as a factual matter, excluding persons from facilities that correspond to their gender identity causes harm.

Nor does § 106.31(a)(2) injure girls or women. *Contra* Pls.' Opp'n 17. Plaintiffs continue to ignore the record evidence supporting the Department's reasoned conclusion that allowing individuals to access facilities consistent with their gender identity does not diminish safety, privacy, or access to educational opportunities for other students. Defs.' Mot. 19-20 & n.5; 89 Fed. Reg. at 33,820. Plaintiffs speculate that allowing access poses safety risks, Pls.' Opp'n 17 & n.5, but the actual record evidence and the experience of recipients with such policies are unequivocal: it does not. The record similarly indicates that recipients have methods of protecting all students' privacy, including by providing "gender-neutral or single-occupancy facilities," or by "taking nondiscriminatory steps . . . consistent with their general codes of conduct." 89 Fed. Reg. at 33,820.

Plaintiffs find it "illogical[]" that § 106.31(a)(2) contains carve-outs, Pls.' Opp'n 16, but that is an accurate reflection of the fact that Congress has identified some contexts where sex differentiation is not prohibited. *See, e.g.*, 34 C.F.R. § 106.31(a)(2) (exception for "20 U.S.C. 1681(a)(1) through (9)").

Finally, Plaintiffs' arguments that § 106.31(a)(2) is arbitrary or capricious also fail. Plaintiffs

---

[3] By contrast, the Department did not find evidence that a typical cisgender student suffers sex-based harm from using sex-separate facilities in this context. Plaintiffs overread a transcript excerpt from another case, Pls.' Opp'n at 16, but that transcript excerpt merely addresses this undisputed distinction in the context of a specific hypothetical.

argue that the Department's explanation is "implausible" because the provision will in fact harm "students and particularly women." Pls.' Opp'n 26-27. But as just discussed, the Department concluded based on ample evidence that § 106.31(a)(2) would not infringe on privacy or safety interests. Defs.' Mot. 19-20 & n.5 (citing AR_293039-53, AR_293260-84).[4] Plaintiffs now cite a 2024 document which they characterize as questioning whether "social transition" "improves mental health for children." Pls.' Mem. 26 n.9.[5] This argument is an odd fit given that § 106.31(a)(2) does not determine whether anyone undergoes "social transition," but in any event the Department did consider comments arguing that "affirming a gender identity different than a person's sex assigned at birth could do more harm than good," and concluded with regard to § 106.31(a)(2)'s limited scope that "individuals (and their parents, as appropriate) are better positioned to weigh any harms and benefits for themselves than is an educational institution." 89 Fed. Reg. at 33,818-20.

Nor did the Department overlook reliance interests. The only reliance interest the States now assert, Pls.' Opp'n 27-28, is having built "physical facilities, including rest rooms and locker rooms," Pls.' Opp'n 27. But the Rule does not require changes to those facilities, Defs.' Mot. 20 (quoting 89 Fed. Reg. at 33,820). Plaintiffs gesture at reliance interests of non-State plaintiffs, but have never explained what they believe those to be, let alone shown that the Department unreasonably failed to consider them. *See* Pls.' MSJ 32-33, ECF No. 79 (referring only to reliance interests of states).

### C.    Section 106.2's Definition of Hostile Environment Harassment Is Lawful.

Section 106.2's definition of hostile environment sex-based harassment—"[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from

---

[4] Defendants and the Rule did not waive the issue, it was discussed at length. Defs.' Mot. 19-20 & n5.
[5] As an independent reason to reject this argument, Plaintiffs do not show that this 2024 document is in the administrative record. See *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994) (arbitrary or capricious standard evaluates if an action is "supported by the facts in the record").

the recipient's education program or activity . . . ," 34 C.F.R. § 106.2—differs only modestly from the prior definition in the 2020 Amendments, *compare* 34 C.F.R. § 106.2, *with* 85 Fed. Reg. 30,026, 30,574 (May 19, 2020), and mirrors the standard used in "numerous civil rights laws, including Title VII." 89 Fed. Reg at 33,508. Plaintiffs' objections rely on misinterpretations of § 106.2.

           1.     <u>The Definition Does Not Violate the First Amendment.</u>

Plaintiffs' constitutional challenges fail because the hostile environment harassment definition does not infringe on any First Amendment right. Indeed, a similar standard for Title VII has operated for decades without courts identifying any First Amendment concerns. *E.g.*, 89 Fed. Reg. at 33,506 (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 667 (1999); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). To further ensure no First Amendment issues would arise, the Rule also makes clear that "nothing in the regulations" "requires or authorizes a recipient to violate anyone's First Amendment rights." *Id.* at 33,516; *see also* 34 C.F.R. § 106.6(d). In other words, recipients must address hostile environments within the constraints of the First Amendment. 89 Fed. Reg. at 33,503. None of Plaintiffs' specific arguments undermine the well-settled constitutionality of this standard, particularly given the Rule's clear consideration of and explicit protection for First Amendment rights:

        ***The definition does not compel speech or discriminate on the basis of viewpoint.*** *Contra* Pls.' Mem. 21-23. Section § 106.2 does not compel any particular speech by students or staff, or require anyone to affirm "any particular view on any issue." 89 Fed. Reg. at 33,505. Plaintiffs' contrary assertions that the Rule requires policies that compel the use of particular pronouns or particular views about gender rest on distortions of § 106.2.

Requiring a school to address sex-based harassment is different in kind from "telling" students and staff "what they must say," *Rumsfeld v. FAIR, Inc.*, 547 U.S. 47, 61 (2006), and recipients can ensure a classroom is free from sex-based "intimidation, ridicule, and insult" without policing every "utterance." *Cf. Harris*, 510 U.S. at 21. Plaintiffs try to spin general statements about § 106.2 as

"requir[ing] students and employees to use requested pronouns" and "to affirm gender ideology." Pls.' Mem. 21. But the Rule explained that "whether verbal conduct constitutes sex-based harassment is necessarily fact-specific," and "a stray remark, such as a misuse of language, would *not* constitute harassment under this standard." 89 Fed. Reg. at 33,516 (emphasis added).

Plaintiffs' misapprehension continues: They contend the Department is "celebrat[ing] silencing those who disagree" with their views, but point to no such "celebration." Although Plaintiffs' reference is opaque, they may be referring to a section of the Preamble citing multiple cases for the proposition that "some prohibitions on harassment that are directed at speech that materially and substantially disrupts school activities are consistent with the First Amendment." *Id.* at 33,504 (citing, among other cases, *L.M. v. Town of Middleborough*, No. 23-cv-11111, 2023 WL 4053023, *6 (D. Mass. June 26, 2023)). Where the Preamble cites a district court case for a broad legal proposition, it does not indicate the Department's position on whether that conduct constitutes hostile environment harassment. The Department took pains to avoid "silencing" anyone, including clarifying that enforcement of the Rule must comport with the First Amendment. Plaintiffs also distort the *Kluge* amicus brief, Pls.'s Opp'n 22, which pre-dated the Rule, was not cited in the Rule, and simply argued that the school's reasonable concerns about an increased risk of Title IX liability offered additional evidence confirming the district court's finding of undue hardship under Title VII.

Plaintiffs suggest that "[t]he very possibility of having one's speech labeled as offensive . . . is impermissibly coercive in a school setting," Pls.' Mem. 22 (citation omitted), but this blinks the reality that schools have long prohibited discrimination and harassment, while still respecting First Amendment protections. And recently, the Sixth Circuit recognized that even a school policy that expressly prohibited "the intentional use of pronouns inconsistent with a student's gender identity" when that conduct rose to the level of harassment did not constitute compelled speech. *Parents Defending Educ. v. Olentangy Loc. Sch. Dist.*, 109 F.4th 453, 459, 465-68 (6th Cir. 2024); *see also id.* at 469

(rejecting a viewpoint discrimination argument given the lack of "any evidence, on this preliminary injunction record, that the District's enforcement of the Policies is different regarding gender identity as compared to any other protected characteristic"). There is thus no question that the Rule, which does not require any particular policy regarding pronouns, is constitutional.

**The definition is not vague or overbroad.** *Contra* Pls.' Mem. 23. Plaintiffs tacitly accept that there is a high standard required for facial invalidation of § 106.2. Further, Plaintiffs do not dispute that § 106.2's definition has many legitimate applications—including to sex-based harassment unrelated to gender identity—which itself precludes them from satisfying their heavy burden on a facial overbreadth claim. *See Harmon v. City of Norman*, 61 F.4th 779, 795 (10th Cir. 2023).

Plaintiffs' opposition no longer disputes that the specific and required elements of § 106.2—that harassment be severe or pervasive, that it be subjectively and objectively offensive, that it limit or deny participation in an educational program—have "common usage and understanding" in the antidiscrimination context, *Rowles v. Curators*, 983 F.3d 345, 358 (2020).

Instead of engaging with the law, Plaintiffs object for the first time to the words "some impact" in the Preamble. Pls.' Opp'n 23. "Some impact" does not appear in the text of § 106.2—the key language from § 106.2 is that prohibited hostile-environment harassment "limits or denies a person's ability to" participate in an educational program, which is perfectly consistent with Title IX's language: "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of" educational programs. 20 U.S.C. § 1681. The phrasing in the Preamble simply explains how a recipient should consider "all of the relevant and not otherwise impermissible evidence" to determine if a person's access was limited or denied, *i.e.*, whether harassment created a hostile environment.

Plaintiffs also add the argument that the Rule "fails to limit its reach to on-campus or closely tied activities." Pls.' Opp'n 23. For one, this is a dispute with 34 C.F.R. § 106.11, which requires a recipient to address a hostile environment occurring "under its education program or activity," not

9

the harassment definition in § 106.2. But § 106.11 is also correct and consistent with Title IX. That harassment may, at times, occur "*under* [a school's] education program or activity, even when some conduct alleged to be contributing to the hostile environment occurred outside the recipient's education program or activity or outside the United States," 89 Fed. Reg. at 33,530 (emphasis added), is entirely consistent with *Davis* and this Circuit's precedent. *See Rost ex rel. K.C. v. Steamboat Sps. RE-2 Sch. Dist.*, 511 F.3d 1114, 1122 n.1 (10th Cir. 2008) ("We do not suggest that harassment occurring off school grounds cannot as a matter of law create liability under Title IX. *Davis* suggests that there must be some nexus between the out-of-school conduct and the school." (citing *Davis*, 526 U.S. at 645)).

Plaintiffs continue to argue that "gender identity" is an unintelligible term, Pls.' Opp'n 23, despite the term's appearance in a Plaintiff-State's own laws and the policies of schools attended by plaintiff-members. Defs.' Mot. 31 n.9. In any event, this argument continues to ignore that the Rule does offer guidance on the meaning of the term. *See* 89 Fed. Reg. at 33,809.

Plaintiffs' attempts to explain away the other fundamental flaws of their First Amendment claims also fail. *See* Pls.' Opp'n 23 (referring to "broader justifications"). Effectively conceding that the challenged definition is materially indistinguishable from standards long applied by courts in the Title VII context, Plaintiffs now suggest that Title VII's harassment standard could also violate the First Amendment. Pls.' Opp'n 23-24. But the case they cite simply applies the severe or pervasive standard, and explicitly states it does not reach the First Amendment issue, *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 596 (5th Cir. 1995), nor have Plaintiffs identified any cases in the decades of enforcement where a court found that the relevant harassment standard posed First Amendment problems. Plaintiffs refer to EEOC proceedings, Pls.' Opp'n 24, but these inquiries are fact-specific and whether any particular conduct violates Title VII is beyond the scope of this lawsuit.

Plaintiffs argue that schools are different from the workplace, Pls.' Opp'n 24, which is no doubt true, but it is likewise the case that "[t]he ability to control and influence behavior exists to an

even greater extent in the classroom than in the workplace." *Davis*, 526 U.S. at 646 (1999).

Plaintiffs also argue incorrectly throughout that the *Davis* standard for private enforcement was adopted to "take[] seriously First Amendment concerns." Pl.'s Opp'n 24, *see also* Pls.' Opp'n 22. But Plaintiffs offer no citation to *Davis* for this point, likely because the majority opinion never refers to the "First Amendment" or "free speech" and addresses related topics only to rebut arguments from the dissenting opinions. *See generally Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999).

Plaintiffs also attempt to minimize the Rule's explicit First Amendment protections by citing two out-of-circuit cases that they argue address "savings clauses." Pls.' Opp'n 25. But in one the court's criticism was that on close reading there actually was *not* a savings clause, *Speech First, Inc. v. Fenves*, 979 F.3d 319, 334 (5th Cir. 2020), *as revised* (Oct. 30, 2020), and the other dealt with a representation by a school, *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1183 (6th Cir. 1995) ("[T]his court declines to accept the representations of [the defendant-university].")). Whether to trust a representation by a university is quite a different question than whether provisions of a Rule—duly promulgated through notice-and-comment rulemaking—exist.

2.   The Definition Does Not Violate RFRA.

As Defendants have explained, the Rule explicitly states at multiple points that the Department "interprets and applies its regulations consistent with RFRA and Title IX's exemption for educational institutions controlled by religious organizations." 89 Fed. Reg. at 33,822; Defs.' Mot. 32. Plaintiffs' short arguments on RFRA—a challenge only brought by the individual and organizational Plaintiffs—continue to misread the Rule and what it prohibits. The case cited by Plaintiffs, Pls.' Opp'n 25 (citing *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 943 (N.D. Tex. 2019)), does not address a rule containing explicit statements that it will be enforced consistent with RFRA. And Plaintiffs fail to articulate any reason why the case-by-case approach to RFRA set forth in the Rule itself "substantially burden[s]" any person's "exercise of religion." 42 U.S.C. § 2000bb–1(a).

### D. The Challenged Reasonable Modification and Leave Provisions Do Not Violate 20 U.S.C. § 1688.

As Defendants previously explained, Defs.' Mot. 33-35, the challenged provisions of the Rule do not regulate, much less require, the provision of abortion services or affect whether and under what circumstances an abortion should be permitted. As the Rule states, "[c]onsistent with [the limitation in 20 U.S.C. § 1688], these final regulations prevent recipients from being required to provide or pay for benefits or services related to, or use facilities for, abortions[.]" 89 Fed. Reg. at 33,757. Plaintiffs have no response to the inescapable fact that Title IX regulations have prohibited discrimination on the basis of "termination of pregnancy" since 1975.[6] *See Department of Health, Education, & Welfare, General Administration,* 40 Fed. Reg. 24,128 (1975) (codified at 45 C.F.R. § 86.21(c)(2), 45 C.F.R. § 86.40(b)(1), *id.* § 86.57(b)).[7]

### E. No Provision of the Rule Violates the Spending Clause.

Plaintiffs' Spending Clause arguments, Pls.' Opp'n 18-21—which rest exclusively on § 106.10, § 106.31(a)(2), and the hostile environment harassment definition in § 106.2, as applied to gender identity discrimination—likewise fail because Congress clearly set funding conditions in Title IX, and for all of the reasons explained above the Rule is consistent with Title IX. *See supra* Part I.A-C.

Section § 106.10 is unambiguous because it reflects the unambiguous scope of Title IX's nondiscrimination provision. Plaintiffs' response is to argue that "Title IX's language" does not address "gender identity," Pls.' Opp'n 19 (citation omitted), and to assert that "sex" meant "biological

---

[6] Also since 1975, Title IX regulations have required schools to provide students and employees leave for termination of pregnancy and to treat termination of pregnancy as any other temporary disability. *See* 40 Fed. Reg. 24,142-44 (codified at 45 C.F.R. §§ 86.40(b)(4)-(5), 86.57(c)-(d)).

[7] Plaintiffs cite an out-of-circuit district court case, which found a challenge to provisions of the Rule relating to termination of pregnancy was likely to succeed in the context of granting a preliminary injunction. Pls.' Opp'n at 28 (citing *Texas v. United States*, No. 2:24-cv-86-Z, 2024 WL 3405342, at *9-10 (N.D. Tex. July 11, 2024)). Defendants believe *Texas* was wrongly decided, and accordingly filed an ongoing appeal. In any event, *Texas* should not govern here—that case involved different arguments and Plaintiffs here have not even tried to explain why the reasoning would be applicable.

sex" in the 1970s, Pls.' Opp'n 19-20. But these just restate Plaintiffs' unavailing challenge to the Department's interpretation of Title IX's unambiguous language, which is lawful for the reasons explained above. *See supra* Part I.A.

Likewise, § 106.31(a)(2) reflects a straightforward application of the established meaning of "discrimination" and the distinctions from Title IX's nondiscrimination mandate that Congress itself drew in enacting the statute.

Similarly, Plaintiffs' invented requirement that the "history" of Title IX address specific issues, Pls.' Opp'n 18, is contrary to the Supreme Court's previous recognition that Title IX's prohibition encompasses forms of sex discrimination not explicitly listed, *cf. Jackson v. Birm. Bd. of Educ.*, 544 U.S. 167, 174-75 (2005). Indeed, the Supreme Court noted in *Bostock* regarding Title VII that Congress's choice to enact "a major piece of federal civil rights legislation" "written in starkly broad terms" "virtually guaranteed that unexpected applications would emerge over time." *Bostock*, 590 U.S. at 680.

## F.     The Rule Does Not Violate the Major Questions Doctrine.

Plaintiffs again fail to identify any challenged provision that would "require the kind of costs or restructuring that might implicate the major questions doctrine." 89 Fed. Reg. at 33,815. But in any event, the Rule does not violate that doctrine for the same reasons that it is consistent with Title IX.

Plaintiffs' misunderstandings of the Rule are myriad. Plaintiffs profess disbelief that the Rule reaches "every teacher, student, and school in America"[8] and "dictate[s] who gets to play on the JV girls' basketball team."[9] Pls.' Opp'n 11. Neither statement is correct, but even Plaintiffs' broad concept is misplaced—it was Congress, not the Department, that gave Title IX its clear and broad scope. *Cf. Bostock,* 590 U.S. at 674 ("[T]he fact that [a statute] has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity; instead, it simply demonstrates [the] breadth

---

[8] In fact, the Rule applies only to recipients of funding from the Department of Education, not all schools. 20 U.S.C. §§ 1681(a), 1682.

[9] The Rule does not change the regulations applicable to sex-separate athletic teams. Defs.' Mot. 5-6.

of a legislative command." (cleaned up)). Because the challenged provisions of the Rule simply exercise the Department's longstanding authority to implement Title IX, within Title IX's congressionally-mandated scope, there is no major-questions doctrine issue. *Cf. Bostock*, 590 U.S. at 680 (any "elephant," "has never hidden in a mousehole; it has been standing before us all along").

## II.   The Individual and Organizational Plaintiffs Have Failed To Demonstrate Standing With Respect to Most of the Challenged Provisions.

In addition to their provision-specific arguments addressed below, Plaintiffs make two generalized arguments. First, Plaintiffs argue that they should not need to establish standing separately for each challenged provision. Pls.' Opp'n 9. That is wrong. *See Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 434 (2017) ("The 'plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'"). Because the Rule's multiple provisions act independently, *see infra* Part III.A, the Court must consider specific provisions in gauging the scope of any relief. Second, Plaintiffs argue that "the court must assume for purposes of standing that Plaintiffs succeed on the merits," Pls.' Opp'n 9, *see also* Pls.' Opp'n 3, 5, 7, but, more precisely, Plaintiffs benefit from the assumption that the challenged provisions are unlawful, not an unhesitating acceptance of their characterization (or mischaracterization) of the Rule. *Cf. Day v. Bond*, 500 F.3d 1127, 1137-38 (10th Cir. 2007) ("[W]e assume, during the evaluation of the plaintiff's standing, that the plaintiff will prevail on his merits argument—that is, that the defendant has violated the law. . . . But there is still work to be done by the standing requirement, and Supreme Court precedent bars us from assuming jurisdiction . . . ."). To conclude otherwise would remove the courts' "obligation to assure [them]selves" of litigants' standing. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006).

The individual and organizational Plaintiffs' standing arguments with respect to individual provisions also fail.

**Section 106.10** – The individual and organizational Plaintiffs lack standing to challenge

§ 106.10 because they do not claim an injury that would stem from § 106.10, properly understood. These plaintiffs' claimed harms from encountering transgender people in, for example, restrooms or locker rooms relate to § 106.31(a)(2), and their claimed harms regarding speech relate, if anything, to the definition of hostile environment harassment in § 106.2. Plaintiffs bring up K.R.'s experiences using the restroom. Pls.' Opp'n 2. But this takes issue with § 106.31(a)(2), not § 106.10, and in any case, given that she will be attending an online school, Suppl. K.R. Decl. ¶ 3, ECF No. 79-2, it is unclear how K.R.'s prior experiences could demonstrate a continuing injury-in-fact. Nor do Plaintiffs offer any explanation of their suggestion that § 106.10 *alone* could affect their speech, Pls.' Opp'n 4.

**Sections 106.40(b)(3)(ii) & (iv) and 106.57(c)-(d)** — The individual and organizational Plaintiffs do not dispute in their opposition that they lack any injury due to the challenged reasonable-modification and leave provisions, including as they apply to abortion.

**The hostile-environment harassment definition of § 106.2** — As Defendants explained previously, Defs.' Mot. 22-25, for a purported "chilling effect" of a regulation to constitute an Article III injury, "[i]t must arise from an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the [regulation's] enforcement." *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004); *see Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (allegations of "a subjective 'chill'" are inadequate). As an initial matter, Plaintiffs are wrong that, by not citing *Walker*, Defendants considered the wrong standard. *Walker*'s three-step inquiry was simply a gloss on the standard of *D.L.S. Rio Grande F. v. Oliver*, 57 F.4th 1147, 1161 (10th Cir. 2023).

The fundamental question under *D.L.S.* and *Walker* is the same—does the purported chilling effect of a regulation "arise from an objectively justified fear of real consequences." *Init. & Ref. Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (quoting *D.L.S.*, 374 F.3d at 975) (alteration omitted). In *Walker*, this particular factor was not at issue. *Id.* at 1090. Here, unlike in *Walker*, the dispute *does* center on whether the individual and organizational Plaintiffs' concerns about the Rule causing their

schools to take disciplinary action against them are credible. They are not. Defs.' Mot. 24-25. Plaintiffs offer four arguments to the contrary, none of which is availing. Pls.' Opp'n 5-7.

Plaintiffs' first argument ignores what the Rule objectively says in favor of deciding for themselves what it "intend[s]." Pls.' Opp'n 5. The Rule does not "let individuals define harassment for themselves," Pls.' Opp'n 6, but rather provides specific requirements similar to those used in other contexts. *See* 34 C.F.R. § 106.2 (defining sex-based harassment including from a hostile environment).

Plaintiffs' second argument is that their fears are justified because "Defendants have taken an active role in cases involving speech on gender identity, sex stereotypes, and transgender issues," citing an amicus brief, a statement of interest, and prior guidance documents. Pls.' Opp'n 6. But those briefs and guidance documents are not the Rule, nor do they govern recipients' application of § 106.2.

Plaintiffs' third argument is that schools "already have Title IX coordinators" and policies, Pls.' Opp'n 6, but Plaintiffs do not explain how or why the existence of this Title IX infrastructure would establish an objectively justified fear with regard to the specific speech they intend to undertake.

Plaintiffs' fourth argument contends that the fact-specific nature of § 106.2 bolsters their standing—this despite acknowledging elsewhere that "[e]verything is fact-specific in antidiscrimination law," Pls.' Opp'n 22—and they once again misinterpret the Rule as "identify[ing] 'misgendering'" as "triggering" the standard for harassment. Pls.' Opp'n 7. What the Rule *actually* said, however, is that the inquiry is fact-specific and "a stray remark, such as a misuse of language, would not constitute harassment." 89 Fed. Reg. at 33,516. (Plaintiffs' reference to "de minimis harm" is also misplaced, as that relates to § 106.31(a)(2), not the harassment standards in § 106.2).

Indeed, Plaintiffs' declarations indicate that they do *not* have a past history of being sanctioned or disciplined for the type of speech they wish to engage in, even where their schools already have conduct codes similar to § 106.2. *See, e.g.*, Flynn Suppl. Decl. ¶ 10, ECF No. 94-2 (no warnings or investigatory proceedings thus far for expressing views); *see* Defs.' Mot. 24-25.

Furthermore, the individuals' and organizations' theory of injury is far from the typical straightforward theory relying on past prosecution. *Walker*, 450 F.3d at 1088. Instead, because the Rule regulates recipients, not individuals, Plaintiffs' theory is that the Rule would somehow cause *their schools* to violate their First Amendment rights, contrary to the Rule's specific instructions. This much resembles the chain of suppositions rejected in *Laird v. Tatum* and criticized in *Walker*. *Id.* at 1090 ("The claim piled speculation upon speculation: the Army might collect information about the plaintiffs, it might take some future action based on that information, and that action might injure the plaintiffs."). The declarants' descriptions further emphasize the subjectivity of their concerns. *See, e.g.*, Flynn Suppl. Decl. ¶ 11 ("I believe there is a threat my institution would punish me for expressing these views."); Casebolt Suppl. Decl. ¶ 10, ECF No. 94-4 ("I have no reason to think my school would punish me for expressing my views, . . . ."). And the declarants' descriptions that they have not witnessed "disruption" based on their past speech makes it even more implausible that their proposed speech would qualify as harassment by being both subjectively and objectively offensive, severe or pervasive, and limit or deny anyone access to an educational program. *E.g.*, Casebolt Suppl. Decl. ¶ 8.

This is precisely the situation the Tenth Circuit cautioned against: "If all it took to summon the jurisdiction of the federal courts were a bare assertion that, as a result of government action, one is discouraged from speaking, there would be little left of the Article III threshold in First Amendment cases." *Walker*, 450 F.3d at 1089. Indeed, the Tenth Circuit's citing with approval of *Faustin v. Denver*, 268 F.3d 942, 948 (10th Cir.2001), where there was "no 'real and immediate threat' of prosecution" based on a prosecutor's determination made clear that the requirement of a "credible" threat does not require a blanket acceptance of plaintiffs' theories of the case.

## III. Any Relief Awarded in this Case Should Comport with Equitable Principles.

### A. Any Relief Should Be Limited to Portions of the Rule Held To Be Unlawful.

Plaintiffs do not dispute that the Rule contains many provisions unrelated to their challenges

regarding gender identity. Defs.' Mot. 40. And Plaintiffs fail to counter Defendants' showing that the challenged provisions are severable. Accordingly, any relief should be limited to the specific portions of the Rule found to be unlawful.

As a threshold matter, the Supreme Court's denial of the stay applications in connection with other cases challenging the Rule does not justify an overbroad injunction here. *Contra* Pls.' Opp'n 31. As the Supreme Court emphasized, those "emergency" applications were evaluated on a "limited record" where the government bore the burden. *Dep't of Educ. v. Louisiana*, 144 S. Ct. 2507, 2510 (2024). Here, by contrast, the burden is on Plaintiffs to justify their request for preliminary injunctive relief. And the Supreme Court majority plainly contemplated that after its decision "the Courts of Appeals w[ould] render their decisions" including on the government's "severability argument"—showing that its denial did not obviate the need for further analysis of those questions. *Id.* at 2510.

Plaintiffs argue that the Rule cannot function without the challenged provisions, Pls.' Opp'n 31-32, and offer two hypotheticals in an attempt to make their point. *See* Pls.' Opp'n 33-34 ("a 'transgender man;'" "a 'transgender woman'"). The fact that both of Plaintiffs' hypotheticals involve transgender status highlights that Plaintiffs' concerns are limited to gender identity. But even if the Rule's inclusion of gender identity were invalidated, the rest of the Rule could function perfectly well. For example, if this Court enjoined § 106.10, but not § 106.40(b)(3)(v) (specifying that a recipient must prevent sex discrimination, § 106.40(b)(3), by ensuring student access to a lactation space), then the latter provision would function simply by operating under Title IX's prohibition against discrimination "on the basis of sex," without any further regulatory gloss. Indeed, the Title IX regulations have long operated without such a regulatory gloss—the Department's pre-existing regulations (amended in 2020) repeatedly reference "sex discrimination" without defining that term or clarifying its scope.

Plaintiffs profess a lack of confidence that the Department would have promulgated the Rule without the challenged provisions, Pls.' Opp'n 33, and argue that the Rule's "purpose" is tied to the

challenged provisions, Pls.' Opp'n 32. but the Rule in fact explains that its primary purpose is "ensur[ing] that all aspects of its regulatory framework under Title IX are well suited to implementing Title IX's prohibition on sex discrimination in education programs or activities that receive Federal financial assistance." 89 Fed. Reg. at 33,860. And the Rule explicitly states that "the potential invalidity of one provision should not affect the other provisions." 89 Fed. Reg. at 33,848; *see also id.* (specifically referencing §§ 106.10, 106.2, and 106.31(a) in discussing the Rule's severability provisions).

Plaintiffs also take the new position that all of § 106.10 is flawed because, in addition to their existing challenges to the phrase "gender identity" in § 106.10, they also dislike the inclusion of "sexual orientation" or "pregnancy condition" in the same provision, Pls.' Opp'n 33.[10] But Plaintiffs cannot amend their complaint through briefing. *See, e.g.*, Compl. ¶ 297 ("The Final Rule is contrary to law because Title IX nowhere refers to 'gender identity,' the Title IX term 'sex' does not include 'gender identity,' and Title IX's prohibition of discrimination 'on the basis of sex' does not encompass discrimination based on 'gender identity.'"). In any case, they have raised no substantive argument— either in their opposition or in their opening summary judgment brief—against § 106.10's inclusion of those other bases for sex discrimination. (Nor do Plaintiffs attempt to argue that those aspects of the Rule injure them.) In any event, Plaintiffs also fail to explain why this eleventh-hour attempt to broaden their claims would warrant vacating the many unrelated provisions of the Rule.

Accordingly, any relief should be limited to, at most, §§ 106.10, 106.31(a)(2), 106.2's "hostile environment harassment" definition as applied to gender-identity discrimination, and the application of §§ 106.40(b)(3)(ii) & (iv) and 106.57(c)-(d) to abortion.

To the extent Plaintiffs also now request relief extending beyond the Rule to other hypothetical

---

[10] Confusingly, Plaintiffs seem to suggest that *Bostock* does not address "sexual orientation," Pls.' Opp'n 33, but it does, *Bostock*, 590 U.S. at 665. And presumably a "pregnancy condition" would be straightforward in Plaintiffs' view that "sex" refers to biological distinctions between male and female.

future actions by the Department, Pls.' Opp'n 30-31; *see also* Pls.' Opp'n 30 (seeking relief "prohibiting DoE from imposing its erroneous reading of Title IX through future agency action"), the Court should reject this expansive request to reach beyond the Rule for at least three reasons.

**(1)** Any such ruling would be an improper advisory opinion. Article III courts are limited to real disputes requiring real-world resolution, which does not include Plaintiffs' speculation that the Department "is likely to try again." Pls.' Opp'n 30; *see Goico v. Kansas*, 773 F. App'x 1038, 1039-40 (10th Cir. 2019) (affirming dismissal where "Plaintiff was seeking 'an advisory opinion as to [ ] future legislation . . . '" (citations omitted)); *see also Franklin v. Martinez*, No. 22-2137, 2023 WL 4995037, at *3 (10th Cir. Aug. 3, 2023) ("the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions"). Similarly, the ripeness doctrine seeks to prevent the adjudication of claims relating to "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation omitted). Deferring the adjudication of future events would not harm Plaintiffs, and any future court would benefit from a case in a "clean-cut and concrete form." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (quoting *Renne v. Geary*, 501 U.S. 312, 322 (1991)).

**(2)** The APA does not authorize relief extending beyond the challenged Rule because future agency actions are not today final agency actions, which Plaintiffs concede. *See* Pls.' Opp'n 30 ("[F]uture attempts are not presently final agency action that would independently trigger the APA's waiver of sovereign immunity."); *see also* 5 U.S.C. § 704 (limiting judicial review under the APA to "[a]gency action made reviewable by statute and final agency action . . . .").

**(3)** Contrary to Plaintiffs' assertion, injunctive or declaratory relief that extends to future agency actions would be superfluous to relief against the Rule, given Plaintiffs' long insistence here that the Rule caused their irreparable harm. *E.g.*, Pls.' Reply Supp. Prelim. Inj. 29-35, ECF No. 43; *see also Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (superfluous relief is moot).

Thus, to the extent Plaintiffs are entitled to relief at all, any relief should not extend beyond the Rule's allegedly offending provisions.

### B.     Any Relief Should Be Limited to the Parties.

If the Court finds that Plaintiffs have succeeded on the merits, rather than vacate the challenged provisions of the Rule or issue a nationwide injunction, the Court should only issue party-specific relief. Plaintiffs argue that vacatur cannot be limited to certain parties, *cf.* Pls.' Opp'n 29 (citing *N.M. Health Conns. v. HHS*, 340 F. Supp. 3d 1112, 1183 (D.N.M. 2018)), but this misses the point. Rather, as Defendants explained in their opening brief, even assuming arguendo that vacatur is authorized by the APA, vacatur is not the appropriate remedy here. Defs.' Mot. 45-46. And indeed, vacatur, like other equitable relief, is never required, consistent with the Tenth Circuit's recognition that vacatur is not the sole form of relief for APA cases. *See Dine Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1049 (10th Cir. 2023) ("While *Regents* recognizes the importance of following procedures, it does not suggest that vacatur is the only proper remedy for an APA violation.").

Plaintiffs do not even attempt to rebut Defendants' arguments. Pls.' Opp'n 28-30. As Defendants have explained, Defs.' Mot. 45-46, vacatur or a universal injunction is inappropriate where party-specific relief, such as a more limited injunction, would redress Plaintiffs' injuries while avoiding the negative aspects of overbroad universal remedies, such as affecting "nonparties who may not wish to receive the benefit of the court's decision." *United States v. Texas*, 599 U.S. 670, 703 (2023) (Gorsuch, J., concurring). *Cf., e.g., Labrador v. Poe*, 144 S. Ct. 921, 921-28 (2024) (Gorsuch, J., concurring).

### C.     Plaintiffs Have Not Demonstrated Irreparable Harm Justifying Injunctive Relief that Reaches Outside the Plaintiff-States.

Here, even if the Court finds that Plaintiffs have succeeded on the merits of one or more of their claims, the scope of any permanent injunction should be tailored because a permanent injunction requires showing, *inter alia*, irreparable harm unless the injunction is issued, *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007), and because "injunctive relief should be no more

burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Plaintiffs do not dispute this fundamental principle, and they fail to show any basis to extend relief outside the Plaintiff States.

First, Plaintiffs still do not identify irreparable harm to the plaintiff-States themselves in support of their motion. *See* Defs.' Mot. 47, *see generally* Pls.' Opp'n.

Second, even if the States had demonstrated irreparable harm with respect to one or more of the challenged provisions, Plaintiffs have not shown they are entitled to any injunctive relief beyond those States. With the exception of § 106.31(a)(2), the individual and organizational Plaintiffs fail to even demonstrate standing to seek relief as to the challenged provisions. As to § 106.31(a)(2), the individual Plaintiff faces no imminent injury, and even if the organizational Plaintiffs have demonstrated associational standing by showing that at least one of their members would likely be harmed by that provision, they have failed to meet their burden to show that injunctive relief is necessary to redress irreparable harm to any organization members outside the Plaintiff States.

       1.    <u>Given that the Individual and Organizational Plaintiffs Lack Standing as to Most of the Challenged Provisions, They Also Lack Irreparable Harm.</u>

As to the challenged provisions other than § 106.31(a)(2), Plaintiffs have failed to demonstrate standing, as discussed above. *See supra* Part II. Because Plaintiffs lack an injury-in-fact, they necessarily have not demonstrated irreparable harm justifying injunctive relief. Indeed, the standard for irreparable harm is higher, requiring proof of harm that is certain, great, and imminent. Still, the Court need not revisit its earlier decision about the organizational plaintiffs' standing in order to limit injunctive relief, because the inquiries are distinct. *See, e.g., Ziggy1 Corp. v. Lynch*, CIV-15-0715-HE, 2016 WL 4083656, at *1 (W.D. Okla. Mar. 23, 2016);[11] *see also, e.g., Bowman v. Merrimac R.E. Hlds., LLC*,

---

[11] Plaintiffs argue that, unlike in the *Ziggy1* case, they do not intend to catalogue financial damages, Pls.' Opp'n 36-37, but offer no contrary authority equating the tests for standing and irreparable injury.

No. CIV-19-0675-F, 2019 WL 6341647, at *6 (W.D. Okla. Nov. 27, 2019) (explaining that plaintiff's standing to seek judicial relief under statute was "the beginning, not the end, of the story" because "[t]he appropriate scope of that relief," assuming liability was proven, was "yet to be determined").

2.      The Individual and Organizational Plaintiffs Fail To Demonstrate Irreparable Harm from § 106.31(a)(2) to Justify Relief Outside the Plaintiff States.

To show an entitlement to permanent injunctive relief, Plaintiffs must establish "actual" irreparable injury that is "certain" and "great" and that creates a "clear and present need" for the relief sought. *Heideman v. Salt Lake City*, 348 F.3d 1182, 1189 (2003); *see Califano*, 442 U.S. at 702.

Plaintiffs contend that the Plaintiff organizations are entitled to injunctions that reach far beyond any limited injuries even arguably demonstrated. But Plaintiffs cite no authority for the proposition that injunctive relief to an organization with associational standing must reach all members of the association. While Plaintiffs rely on Justice Thomas's concurrence in *FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024), Pls.' Opp'n 34, that was not the majority opinion, and Justice Thomas was writing to criticize associational standing. *See* 602 U.S. at 399-400 ("Associational standing seems to run roughshod over this traditional understanding of the judicial power. . . . I thus have serious doubts that an association can have standing to vicariously assert a member's injury."); *see also id.* at 405 ("In this suit, rejecting our associational-standing doctrine is not necessary to conclude that the plaintiffs lack standing."). Plaintiffs also cite the syllabus in *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977), Pls.' Opp'n 34, but the language in that case about "individualized proof" relates to the third prong of the associational standing test, not the appropriate scope of relief once a plaintiff has prevailed on the merits of its claim, and in any event the plaintiff-organization there focused on assisting apple growers from only a single state. *Hunt*, 432 U.S. at 336-37. Plaintiffs cite *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.*, 958 F.2d 1018 (10th Cir. 1992), Pls.' Opp'n 35, but the cited discussion from that case is dicta, which merely characterizes the district court's reasoning

23

on the way to reversing its standing decision on other grounds. *See* 958 F.2d at 1021-22 ("Although the district court may have correctly determined that individual participation of the providers will not be required with respect to the injunctive relief sought by plaintiffs, . . . ").

None of these cases, in short, relieves the individual or organizational Plaintiffs of their burden to show that they face irreparable injury from § 106.31(a)(2) to justify a sweeping injunction. As Defendants have explained, Defs.' Mot. 47, K.R.'s concerns about § 106.31(a)(2) were speculative and have been obviated by her switching to schooling from home. The organizational plaintiffs, in turn, present no evidence of injuries that would be caused by § 106.31(a)(2) outside Kansas, Utah, and Wyoming. The YAF declarants, including the two declarants submitting supplemental declarations with Plaintiffs' opposition, Flynn Suppl. Decl.; Adcock Suppl. Decl. ECF No. 94-3, all attend school in Wyoming, Kansas, and Utah. Many of the FAU declarants also attend school in Wyoming, Kansas, and Utah, with the apparent exception of A.K. and H.K., who attend school in Washington[12] and a new declarant, Casebolt Suppl. Decl., who attends school in Idaho. The new declarant does not identify any concerns about sharing spaces with transgender students. *See generally* ECF No. 94-4. And, as previously discussed, Defs.' Mot. 48-49, no MFL declarant provides evidence that her children would be injured by § 106.31(a)(2) outside the Plaintiff States.

Plaintiffs' responses to these arguments are two: first, that the organizations have "members in other states," Pls.' Opp'n 35, and second, that members may face speech-based injuries, *see* Pls.' Opp'n 35 ("YAF also provides speakers who can travel anywhere," "it is not just about access to locker and bathrooms, but the right to discuss these and many other topics"). As to the first argument, although Plaintiffs have now had multiple opportunities, they have not submitted any additional

---

[12] Defendants previously explained why the FAU members residing in Washington have not established an imminent irreparable injury, both because of Washington state law and the lack of any information indicating that any specific interaction was certainly impending. Defs.' Mot. 48.

declarations that would give substance to any irreparable harms that members of Plaintiff organizations would face from § 106.31(a)(2) in other states (for example, describing an imminent situation in which the Rule would cause them to be called upon to share a restroom with a transgender person). Plaintiffs bear the burden to demonstrate entitlement to the injunctive relief they seek; it does not suffice for Plaintiffs to ask the Court to assume the existence of injured members elsewhere. As to the second argument, it relates not to § 106.31(a)(2), but rather to the definition of hostile environment harassment in § 106.2—for the reasons explained above, Plaintiff organizations have not even demonstrated that any member has standing to challenge the latter provision.

Plaintiffs also argue that the Rule "has a powerful coercive effect" on states, Pls.' Opp'n 36, but make no attempt to show that any state adopted a law because of the Rule. Such a coercion theory seems implausible in light of the states that have *not* adopted similar state laws. In any event, this is an argument that rings in redressability, not in whether Plaintiffs would imminently experience an irreparable injury in the absence of a permanent injunction.

Accordingly, even if Plaintiffs prevail on the merits, any injunctive relief should not extend beyond § 106.31(a)(2) or outside the Plaintiff States.

3. <u>The equities and public interest counsel against an overbroad injunction.</u>

The balance of the equities and public interest—which Plaintiffs do not address in their opposition—also weigh against the broad injunction sought here, given the injury to the government if its anti-discrimination policies are enjoined. Defs.' Mot. 50.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment on the administrative record for Defendants. In the alternative, any relief should be limited to the parties and to the provisions of the Rule that the Court concludes are unlawful and harmful to Plaintiffs.

Dated: October 24, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

*/s/ Rebecca Kopplin*
REBECCA KOPPLIN
Cal. Bar 313970
ELIZABETH TULIS
BENJAMIN TAKEMOTO
JOHN T. LEWIS
CLAYTON L. BAILEY
PARDIS GHEIBI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: 202-514-3953
Email: Rebecca.M.Kopplin@usdoj.gov

*Counsel for Defendants*